In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00161-CR
______________________________


TRANSITO JOSE RODRIGUEZ, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 30307-B


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N
Â Â Â Â Â Â Â Â Â Â Transito Jose Rodriguez was convicted by a jury of aggravated robbery with a
deadly weapon.


 He pled true to the enhancement paragraph, and the jury assessed thirty
years' imprisonment. Rodriguez contends that there is legally and factually insufficient
evidence to support his conviction and that the sentence imposed was disproportionate to
the offense, and was therefore cruel and unusual punishment in violation of the Eighth
Amendment to the United States Constitution. 
I. Factual Background
Â Â Â Â Â Â Â Â Â Â Brandi Johnson and LaToya Williams were two female clerks working at a gasoline
station and convenience store when Rodriguez stopped and began filling his vehicle with
gasoline. Williams recognized Rodriguez and felt he was pumping more gasoline than he
could afford. She approached Rodriguez and asked him whether he had enough money
to pay for the gasoline. He told her he did, but only showed her a one dollar bill. Williams
took the keys from Rodriguez' truck and went back inside the store. Johnson called the
police and went outside to make a note of Rodriguez' license plate number. While
Johnson was noting the license plate number, she heard a click. When she turned around,
Rodriguez was three feet away, pointing the open blade of a knife at her. Johnson told
Rodriguez to "go on with that knife," and went back into the store. Williams called the
police again and informed them Rodriguez had a knife. Rodriguez then came into the
store, asked the clerks for his keys, and tried to convince them he could obtain the money
to pay for the gasoline. They declined to return his keys. Although it is unclear from the
record how he did so, Rodriguez was able to start his car and leave the scene before the
police arrived. 
Â Â Â Â Â Â Â Â Â Â When the police arrived, Johnson and Williams described the events and gave a
description of Rodriguez, including what he was wearing and the car he was driving. The
police apprehended Rodriguez a few hours later. They discovered an open pocketknife
in the console of his vehicle. They transported him back to the station and store, where
Johnson identified him. She also identified the knife found in Rodriguez' car as the same
knife used in the confrontation. 
Â Â Â Â Â Â Â Â Â Â The indictment charged that Rodriguez did "while in the course of committing theft
. . . intentionally or knowingly threaten and place Brand[i] Johnson in fear of imminent
bodily injury or death, and the defendant did then and there use or exhibit a deadly
weapon, to-wit: a knife." The jury found him guilty of aggravated robbery, and an
affirmative finding of the use of a deadly weapon was made. 
II. Legal and Factual Sufficiency
Â Â Â Â Â Â Â Â Â Â In our review of the legal sufficiency of the evidence, we employ the standards set
forth in Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the court to view the
relevant evidence in the light most favorable to the verdict and determine whether any
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In our
review, we must evaluate all of the evidence in the record, both direct and circumstantial,
whether admissible or inadmissible. Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim.
App. 1999). 
Â Â Â Â Â Â Â Â Â Â When reviewing a challenge to the factual sufficiency of the evidence to support the
conviction, we are required to determine whether, considering all the evidence in a neutral
light, the jury was rationally justified in finding guilt beyond a reasonable doubt. Zuniga v.
State, No. 539-02, 2004 Tex. Crim. App. LEXIS 668, at *20 (Tex. Crim. App. Apr. 21,
2004). There are two ways in which we may find the evidence factually insufficient. First,
if the evidence supporting the verdict, considered alone, is too weak to support the jury's
finding of guilt beyond a reasonable doubt, then we must find the evidence insufficient. Id. 
Second, ifâwhen we weigh the evidence supporting and contravening the convictionâwe
conclude that the contrary evidence is strong enough that the state could not have met its
burden of proof, we must find the evidence insufficient. Id. "Stated another way, evidence
supporting guilt can 'outweigh' the contrary proof and still be factually insufficient under a
beyond-a-reasonable doubt standard." Id. If the evidence is factually insufficient, then we
must reverse the judgment and remand for a new trial. Clewis v. State, 922 S.W.2d 126,
135 (Tex. Crim. App. 1996).
Â Â Â Â Â Â Â Â Â Â Conflicts in the evidence are to be resolved by the jury. In doing so, it may accept
one version of facts and reject another or reject any of a witness' testimony. Penagraph
v. State, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981). In so doing, it is the
jury's job to judge the credibility of the witnesses and the weight to be given their testimony,
and it may resolve or reconcile conflicts in the testimony, accepting or rejecting such
portions thereof as it sees fit. Banks v. State, 510 S.W.2d 592, 595 (Tex. Crim. App.
1974). Thus, the appellate court can consider only those few matters bearing on credibility
that can be fully determined from a cold appellate record. Johnson, 23 S.W.3d at 8. "Such
an approach occasionally permits some credibility assessment but usually requires
deference to the jury's conclusion based on matters beyond the scope of the appellate
court's legitimate concern." Id. Thus, conflicts between witnesses will generally be
inviolate, but the validity of testimony can be treated as questionable because of other
factors, such as adverse conditions affecting the ability of the witness to observe an
assailant. Id. at 9. When evidence both supports and conflicts with the verdict, we must
assume the fact-finder resolved the conflict in favor of the verdict. Turro v. State, 867
S.W.2d 43, 47 (Tex. Crim. App. 1993).
Â Â Â Â Â Â Â Â Â Â A person commits the offense of robbery if, in the course of committing a theft, with
intent to obtain or maintain control of the property, he or she intentionally or knowingly
threatens or places another in fear of imminent bodily injury or death. Tex. Pen. Code Ann.
Â§ 29.02(a)(2) (Vernon 2003). The offense becomes aggravated if the person uses or
exhibits a deadly weapon. Tex. Pen. Code Ann. Â§ 29.03(a)(2) (Vernon 2003). "In the
course of committing theft" means conduct that occurs during or in immediate flight after
the commission of theft. Tex. Pen. Code Ann. Â§ 29.01(1) (Vernon 2003). 
Â Â Â Â Â Â Â Â Â Â Rodriguez contends the evidence is legally and factually insufficient to show that he
was guilty of aggravated robbery or that the knife he used during the alleged robbery was
a deadly weapon. He does not contest his identity as the perpetrator or whether he, in fact,
stole the gasoline. 
Â Â Â Â Â Â Â Â Â Â A. Threaten or Place Another in Fear of Imminent Bodily Injury or Death
Â Â Â Â Â Â Â Â Â Â The accused need not expressly threaten another or display a weapon to commit
robbery. See Welch v. State, 880 S.W.2d 225, 227 (Tex. App.âAustin 1994), vacated &
remanded on other grounds, 941 S.W.2d 949 (Tex. Crim. App. 1997); Williams v. State,
827 S.W.2d 614, 616 (Tex. App.âHouston [1st Dist.] 1992, pet. ref'd). It is sufficient to
constitute robbery if the accused places the complainant in fear of imminent bodily injury
or death to the degree that "reason and common experience" will likely induce the
complainant to part with her or his property against his or her will. Devine v. State, 786
S.W.2d 268, 270 (Tex. Crim. App. 1989); Cranford v. State, 377 S.W.2d 957, 958 (Tex.
Crim. App. 1964).
Â Â Â Â Â Â Â Â Â Â In Cranford, 377 S.W.2d at 958, the defendant committed robbery when he
approached a cashier in a grocery store, handed her a note reading, "Give me your
money," verbally assured the cashier he was not joking, and made a gesture the cashier
thought was a reach for a weapon. A robbery conviction was also upheld when the
defendant was not armed and made no express threats, but his demands for money and
"generally aggressive manner" were enough to place a reasonable person in fear of
imminent bodily injury or death. Welch, 880 S.W.2d at 227; see also Pitte v. State, 102
S.W.3d 786, 793 (Tex. App.âTexarkana 2003, no pet.) (threat, "you'd better move or I'll
knock you out," in conjunction with close proximity and other circumstances sufficient to
place complainant in fear of imminent bodily injury or death). 
Â Â Â Â Â Â Â Â Â Â Rodriguez points out he did not take any action to stab or "slash" at Johnson, or
threaten her with words. While the record supports this contention, there was ample
testimony Johnson was reasonable in fearing imminent bodily injury or death when
Rodriguez pointed the knife at her. Johnson testified that, when she was taking note of
Rodriguez' license plate number, she heard a click. When she turned around, Rodriguez
was three feet away, pointing the open blade of a knife at her. She testified she was afraid
he would use it, it put her in fear, and she felt threatened. In addition, Officer Chris Taylor
testified that pointing a knife at someone, as did Rodriguez, is a direct threat to use deadly
force. 
Â Â Â Â Â Â Â Â Â Â Â Here, the threat of a knife pointed at Johnson, in conjunction with Rodriguez'
proximity to her, taken together with the other circumstances, was sufficient to place
Johnson in fear of imminent bodily injury or death. Reason and common experience
suggest that this set of circumstances would place Johnson in the kind of fear likely to
induce her to part with her property against her will.
Â Â Â Â Â Â Â Â Â Â Rodriguez contends Johnson was not placed in fear. He points to the fact that she
did not scream or yell when he pulled the knife or when he went into the store and that she
continued to work until her shift was over. Johnson, however, testified she did not want to
continue working, but her supervisor directed her to finish her shift. She also testified
positively that she was afraid he would use the knife, that it put her in fear, and that she felt
threatened. 
Â Â Â Â Â Â Â Â Â Â Viewing the relevant evidence in the light most favorable to the verdict, there was
ample testimony from which a rational trier of fact could have found that Johnson was
reasonable in fearing imminent bodily injury or death when Rodriguez pointed the knife at
her. In addition, weighing the evidence in a neutral light, there is factually sufficient
evidence to establish that Johnson was reasonable in fearing imminent bodily injury or
death. 
Â Â Â Â Â Â Â Â Â Â B. Deadly Weapon 
Â Â Â Â Â Â Â Â Â Â A deadly weapon is "a firearm or anything manifestly designed, made, or adapted
for the purpose of inflicting death or serious bodily injury; or . . . anything that in the manner
of its use or intended use is capable of causing death or serious bodily injury." Tex. Pen.
Code Ann. Â§ 1.07(17) (Vernon Supp. 2004). Generally, a knife is not a deadly weapon by
design. Thomas v. State, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991). A knife can be
a deadly weapon, however, if in the manner of its use or intended use it is capable of
causing death or serious bodily injury. McCain v. State, 22 S.W.3d 497, 503 (Tex. Crim.
App. 2000); Brown v. State, 716 S.W.2d 939, 946 (Tex. Crim. App. 1986). To determine
whether a knife is a deadly weapon in the manner of its use or intended use, we consider
the size, shape, and sharpness of the knife; the manner of its use or intended use; its
capacity to produce death or serious bodily injury; and testimony concerning the knife's life-threatening capabilities. Brown, 716 S.W.2d at 946; Nickerson v. State, 69 S.W.3d 661,
670 (Tex. App.âWaco 2002, pet. ref'd). Wounds need not be inflicted before a knife can
be determined to be a deadly weapon. Brown, 716 S.W.2d at 946. Each case is
examined on its own facts to determine whether the jury could have concluded from the
surrounding circumstances that the knife was used or intended to be used as a deadly
weapon. Wade v. State, 951 S.W.2d 886, 892 (Tex. App.âWaco 1997, pet. ref'd). These
surrounding circumstances can include a defendant's verbal threats, the distance between
the defendant and the victim, and the witness' description of the knife. Id.
Â Â Â Â Â Â Â Â Â Â In this case, the knife was admitted into evidence. It had a relatively short blade
with the tip broken off. Johnson testified the knife could hurt a person. See Tisdale v.
State, 686 S.W.2d 110, 117 (Tex. Crim. App. 1984) (op. on reh'g) (Clinton, J., concurring)
(finding that, if from actual observations made at time of offense, victim should express
opinion as to "capability" of knife exhibited, it has probative value). Officer Jose Montalvo,
Jr., testified the knife found in Rodriguez' vehicle and identified by Johnson as appearing
to be the knife Rodriguez pointed at her was a deadly weapon capable of inflicting serious
bodily injury or death. Taylor testified that holding that knife out to someone would be a
direct threat of deadly force and that the knife could easily kill, or at least do serious bodily
injury. In addition, Rodriguez was in close proximity to Johnson, three feet, with the knife
pointed at her back. 
Â Â Â Â Â Â Â Â Â Â In Tisdale, 686 S.W.2d at 115 (op. on reh'g), the evidence demonstrated that the
defendant's use of the knife was by showing it to his victim. The defendant entered a
grocery store and carried several items to the cashier. Id. When the cashier opened the
cash register, the defendant placed his left hand over the cash tray. Id. The cashier
grabbed his hand and said, "No," to which the defendant replied, "Yes," and produced a
knife. Id. The cashier backed up, and the defendant took the money from the cash tray. 
Id. The court noted the defendant was within reach of the cashier, the cashier was in fear
of death or serious bodily injury, and thought the defendant could have caused serious
bodily injury or death. Id. The court found the defendant's actions were perceived by the
cashier as an implied threat, and the finder of fact could find likewise. Id. The concurring
opinion in Tisdale pointed out that, in order to determine in a given situation whether a
knife is a deadly weapon, a fact-finder should consider its intended use from the attitude
indicated by the perpetrator. Id. at 117. When a suspect acts in a way that shows his or
her purpose is to convey to the victim that he or she will thwart resistance to a taking by
using a knife to harm the person of the victim, the suspect intends for the victim "to believe
that the knife [is] capable of producing serious bodily injury or death to obtain the money,"
Cruz v. State, 576 S.W.2d 841, 843 (Tex. Crim. App. 1979), and the fact-finder is
warranted in concluding the knife is capable of causing death or serious bodily injury. Id. 
Â Â Â Â Â Â Â Â Â Â The Amarillo Court of Appeals in Billey v. State, 895 S.W.2d 417, 422 (Tex.
App.âAmarillo 1995, pet. ref'd), wrote:

[E]vidence is sufficient if a knife is capable of causing death or serious bodily
injury or if it is displayed in a manner conveying an express or implied threat
that serious bodily injury or death will be inflicted if the desire of the person
displaying the knife is not satisfied. Â 
Â Â Â Â Â Â Â Â Â Â In this case, Johnson was making a note of Rodriguez' license plate number after
he had pumped gasoline into his vehicle for which he could not pay. Rodriguez' action in
pointing a knife at Johnson was an implied threat of deadly force to stop the efforts to
effectuate his capture and an implied threat he would thwart efforts to hinder his getaway. 
See Tex. Pen. Code Ann. Â§ 29.01(1) ("In the course of committing theft" means conduct
that occurs during the commission, or in immediate flight after the commission, of theft). 
The State met its burden of showing that the knife used was a deadly weapon. Rodriguez
intended for Johnson to believe that the knife was capable of producing serious bodily
injury or death, and the fact-finder was warranted in so concluding. For those reasons,
viewing the relevant evidence in the light most favorable to the verdict, there was ample
evidence from which a rational trier of fact could find that Rodriguez used or exhibited the
knife as a deadly weapon during the course of committing robbery. In addition, weighing
the evidence in a neutral light, there was factually sufficient evidence to establish that
Rodriguez used or exhibited the knife as a deadly weapon during the course of the
robbery. 
III. Disproportionate Sentence
Â Â Â Â Â Â Â Â Â Â Rodriguez also contends his thirty-year sentence constitutes cruel and unusual
punishment in violation of the Eighth Amendment to the United States Constitution. See
U.S. Const. amend. VIII.
Â Â Â Â Â Â Â Â Â Â Aggravated robbery is a first degree felony. Tex. Pen. Code Ann. Â§ 29.03(b)
(Vernon 2003). A first degree felony is punishable by imprisonment for a term of life or for
any term of not more than ninety-nine years or less than five years and by a fine of up to
$10,000.00. Tex. Pen. Code Ann. Â§ 12.32 (Vernon 2003). In addition, Rodriguez pled true
to the enhancement paragraph, which presented that he was convicted of felony
possession of a controlled substance listed in Penalty Group One of the Texas Controlled
Substances Act. This enhanced the punishment range for Rodriguez from fifteen to ninety-nine years. See Tex. Pen. Code Ann. Â§ 12.42(c)(1) (Vernon Supp. 2004). The jury
assessed Rodriguez' punishment at thirty years' imprisonment. 
Â Â Â Â Â Â Â Â Â Â Rodriguez did not preserve his alleged error for review. To preserve a complaint for
appellate review, an appellant must have presented to the trial court a timely request,
objection, or motion stating the specific grounds for the ruling desired. Tex. R. App. P.
33.1(a)(1)(A); Rhoades v. State, 934 S.W.2d 113, 119 (Tex. Crim. App. 1996). Rodriguez
did not object at the sentencing hearing to his thirty-year sentence on the basis of it being
disproportionate to the offense, and therefore being cruel and unusual punishment in
violation of the Eighth Amendment. Nor did he raise the issue in a post-judgment motion. 
Accordingly, he has waived this point of error. See Steadman v. State, 31 S.W.3d 738,
742 (Tex. App.âHouston [1st Dist.] 2000, pet. ref'd) (holding defendant waived issue of
whether forty-year sentence for aggravated robbery was cruel and unusual punishment);
Jackson v. State, 989 S.W.2d 842, 844 (Tex. App.âTexarkana 1999, no pet.).
Â Â Â Â Â Â Â Â Â Â Even if Rodriguez did properly preserve error, we find his sentence does not amount
to cruel and unusual punishment under the Eighth Amendment. 
Â Â Â Â Â Â Â Â Â Â We recognize that a prohibition against grossly disproportionate sentences does
survive under the Eighth Amendment and that it does so apart from any consideration of
whether the punishment assessed is within the range established by the Legislature in a
valid statute. Jackson, 989 S.W.2d at 846. In Solem v. Helm, 463 U.S. 277, 287â90
(1983), the United States Supreme Court enunciated three factors for evaluating the
proportionality of a sentence: (1) the gravity of the offense and the harshness of the
punishment, (2) the sentences imposed on other criminals in the same jurisdiction, and (3)
the sentences imposed for commission of the same crime in other jurisdictions. The Solem
test has subsequently been called into question by Harmelin v. Michigan, 501 U.S. 957
(1991). Therefore, we assess the proportionality of Rodriguez' sentence by applying the
Solem test in keeping with our approach in Davis v. State, 905 S.W.2d 655, 664 (Tex.
App.âTexarkana 1995, pet. ref'd), and consistent with the Fifth Circuit's modified test as
set out in McGruder. We initially make a threshold comparison of the gravity of the offense
against the severity of the sentence and then ask whether the sentence is grossly
disproportionate to the offense. McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992);
see also Jackson, 989 S.W.2d at 845â46. Only if gross disproportionality is found do we
then compare this sentence to sentences received for similar crimes in this and other
jurisdictions. McGruder, 945 F.2d at 316; Jackson, 989 S.W.2d at 846. Â 
Â Â Â Â Â Â Â Â Â Â Considering whether Jackson's sentence is grossly disproportionate to the offense,
it should be noted that not only is Jackson's sentence within the range of punishment
prescribed by the Legislature for habitual felony offenders, but it is also on the low end of
the range that could be assessed under these facts. This is not a harsh sentence for
conviction of a second felony offense, the second felony being for aggravated robbery with
a deadly weapon. Because we find Rodriguez' sentence is not grossly disproportionate
to the offense for which he was convicted, factors two and three of the Solem test need not
be considered. 
Â 

IV.Â Â Â Â Â Â Conclusion 
Â Â Â Â Â Â Â Â Â Â We affirm the judgment.



Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Donald R. Ross
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Date Submitted:Â Â Â Â Â Â February 26, 2004
Date Decided:Â Â Â Â Â Â Â Â Â June 8, 2004

Do Not Publish




bottom:0in;
margin-left:.5in;margin-bottom:.0001pt;text-align:justify;text-justify:inter-ideograph;
mso-pagination:widow-orphan;tab-stops:center 3.25in'>   V.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  TREY BECK, AS EXECUTOR OF THE ESTATE OF 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  HAYDEN RUSSELL,
Appellee

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  On Appeal from the 217th
Judicial District Court

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Angelina County, Texas

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Trial Court
No. CV-36,849

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before Morriss, C.J.,
Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Memorandum Opinion by Justice Carter








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  MEMORANDUM OPINION

Â 

I.Â Â Â Â Â Â Â Â Â  Background and Procedural Posture

Â 

Â Â Â Â Â Â Â Â Â Â Â  Hayden
Russell placed on record in Angelina County twelve quitclaim deeds, purportedly
executed by his father, Dale Blanton Russell.[1]Â  The deeds conveyed DaleÂs interest in real estate
to Hayden and HaydenÂs sister, Loretta Russell Kingsley.Â  In this suit, Dale alleges the deeds were
forged by Hayden after Hayden learned his father was disinheriting him; the
jury found Dale signed the deeds. Â The
suit was originally tried to the court, but resulted in a mistrial.Â  After the first suit, Hayden died, leaving a
will which left his estate (except one dollar left to his daughter, Cynthia
Keiser) to his friend Trey Beck.[2]

Â Â Â Â Â Â Â Â Â Â Â  Even though
the only jury question was whether Dale signed the deeds, the issue presented
on appeal is an evidentiary ruling on whether the entirety of the will of the
alleged forger, Hayden, should have been admitted into evidence. 

Â Â Â Â Â Â Â Â Â Â Â  Prior to
trial, the court granted the estateÂs motion in limine regarding the identity
of the beneficiaries of HaydenÂs will, after having determined that this
information was not relevant to the issue of whether the signatures on the
quitclaim deeds were forged.[3]Â  A three-day jury trial ensued in August
2010.Â  During the course of the trial,
Dale reurged his motion to admit HaydenÂs will into evidence.Â  Dale offered the will to show that Hayden did
not name Kingsley as a beneficiary in rebuttal of HaydenÂs testimony.[4]Â  As further grounds for admission, Dale argued
that the testimony of the witness (and probate attorney) Jim Farrell revealed
that his file contained notes to the effect that Hayden intended to leave half
of his estate to Kingsley and half to Cindy, except that Cindy was to receive
an extra $1,000.00.Â  Dale argued that as
a result, the jury was left with the impression that Hayden either left
everything to Kingsley or to Kingsley and Cindy, when in fact, HaydenÂs will
essentially disinherited Cindy.[5]Â  Â Â Â Â Â Â Â Â Â Â Â  

Â Â Â Â Â Â Â Â Â Â Â  The estate
opposed the admission of HaydenÂs will on the ground that it was irrelevant and
would be like throwing Âthe skunk in the jury box.ÂÂ  Counsel for the estate urged:

[The Will] has no relevance to any issue which
Mr. Seale has now argued . . . [the] more narrow [issue of] forgery, just the
signature is the only issue.Â  Certainly
our clientÂs Will . . . and who the beneficiaries of the estate are, bear no
rational evidentiary basis as to whether the man [Dale Russell] signed the
signatures [on the deeds] or not . . . . The 403 argument is still there.

Â 

Â Â Â Â Â Â Â Â Â Â Â  The trial court initially
ruled that HaydenÂs entire will was admissible.Â 
After the court read the will and was confronted with the fact of
CindyÂs disinheritance, the court determined (as a compromise offered by the
estate) to admit the will into evidence only after the amount of the bequests
to Cindy and to Beck were redacted.Â  A
copy of HaydenÂs redacted will was thereafter introduced into evidence. Â Dale introduced an unredacted copy of HaydenÂs
will via a bill of exception.Â  Although
the estate objected to the introduction of HaydenÂs unredacted will, it did not
object to the introduction of HaydenÂs redacted will.Â  

Â Â Â Â Â Â Â Â Â Â Â  The evidence
at trial included the testimony of handwriting experts for both Dale and the
estate.Â  At the conclusion of the
evidence, the jury determined that the deeds were signed by Dale.Â  

II.Â Â Â Â Â Â Â  Appellate Issues

Â 

Â Â Â Â Â Â Â Â Â Â Â  Only one question was asked of the jury: Â ÂDo you find . . . the deeds . . . were signed
by someone other than Dale Russell?Â Â The
jury answer was: Â ÂNo, They were signed
by Dale Russell.ÂÂ  On appeal, Dale does
not dispute the juryÂs dispositive finding that the twelve deeds were executed
by him.Â  Rather, Dale sets out five
issues, all of which basically argue that HaydenÂs will should have been
admitted in its entirety.Â  

Â Â Â Â Â Â Â Â Â Â Â  The estate
presents seven counter-issues, which argue that, for a variety of reasons,
theÂ  trial court did not err in its
decision to admit only a redacted version of HaydenÂs will or that if any error
occurred, it was harmless. 

Â Â Â Â Â Â Â Â Â Â Â  Because we
find (1) no violation of the rule of optional completeness in disallowing
introduction of the unredacted will; (2) the specific bequests in HaydenÂs will
are not relevant to the issue of forgery; and (3) any perceived probative value
of those bequests was substantially outweighed by the danger of unfair
prejudice, the trial court did not abuse its discretion in refusing to admit
into evidence HaydenÂs unredacted will.Â 
We affirm the judgment of the trial court.

III.Â Â Â Â Â Â  Analysis

Â 

Â Â Â Â Â Â Â Â Â Â Â  Together, DaleÂs appellate
issues and the estateÂs counter issues call for the ultimate determination of
whether the trial court abused its discretion in refusing to admit into
evidence HaydenÂs unredacted will.Â  The
admission or exclusion of evidence is a matter within the sound discretion of
the trial court. Â City of Brownsville
v. Alvarado, 897 S.W.2d
750, 753 (Tex. 1995); Hathcock v. Hankook,
330 S.W.3d 733, 740 (Tex. App.ÂTexarkana 2010, no pet.).Â  Â A
trial court abuses its discretion when it acts without regard for any guiding
rules or principles. Â Downer v.
Aquamarine Operators, 701
S.W.2d 238, 241Â42 (Tex. 1985); Hathcock,
330 S.W.3d at 740.Â  Moreover, we must
uphold the trial courtÂs evidentiary ruling if there is any legitimate basis
for the ruling.Â  Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex.
1998).

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  Optional
Completeness

Â 

Â Â Â Â Â Â Â Â Â Â Â  Dale initially asserts that the
unredacted will was admissible under Rules 106 and 107 of the Texas Rules of
Evidence, often jointly referred to as the rule of optional completeness.Â  Rule 106 provides:

When a writing or recorded statement or part
thereof is introduced by a party, an adverse party may at that time introduce
any other part or any other writing or recorded statement which ought in
fairness to be considered contemporaneously with it.Â  ÂWriting or recorded statementÂ includes
depositions.

Â 

Tex. R. Evid.
106 (emphasis added).Â  Rule 107 provides,
in pertinent part:

Â 

When part
of an act, declaration, conversation, writing or recorded statement is
given in evidence by one party, the
whole on the same subject may be inquired into by the other, and
any other act, declaration, writing or recorded statement which is necessary to
make it fully understood or to explain the same may also be given in evidence .
. . .

Â 

Tex. R. Evid.
107 (emphasis added).

Â 

Â Â Â Â Â Â Â Â Â Â Â  We are
unconvinced that the rule of optional completeness applies.Â  Here, both the redacted and unredacted will
were offered into evidence by Dale.Â  The
estate objected to admission of the unredacted will, but as a compromise agreed
to admission of the will in a redacted form.Â 
The rule of optional completeness only applies when one party introduces
part of a statement or document, and in fairness, the opposing party is
permitted to introduce as much of the balance as is necessary to explain the
first part.Â  Jones v. Colley, 820 S.W.2d 863, 866 (Tex. App.ÂTexarkana 1991,
writ denied). Â It is permitted to correct
any misleading impressions left when one party introduces only a portion of the
evidence.Â  See Wright v. State, 28
S.W.3d 526, 536 (Tex. Crim. App. 2000).Â 
A plain reading of Rules 106 and 107 indicates their inapplicability
when the same party seeks to offer an inadmissible omitted portion of a
document it initially sought to introduce.Â 
Here, DaleÂs introduction of admissible evidence (the redacted will)
does not open the door to his further introduction of otherwise inadmissible
evidence (the unredacted will).

Â Â Â Â Â Â Â Â Â Â Â  This rule
does not apply for yet another reason.Â  Under
the rule of optional completeness, additional material from a document or
recording, part of which has been admitted into evidence, is admissible if that
material Âought in fairness to be considered contemporaneously.ÂÂ  Meuth
v. Hartgrove, 811 S.W.2d 626, 629 (Tex. App.ÂAustin 1990, writ
denied).Â  Dale complains that if the will
was going to be admitted into evidence, the specific bequests to Cindy and Beck
should not have been redacted.Â  The trial
court admitted the redacted will for the purpose of showing Kingsley was not a
beneficiary[6] (thus
clarifying earlier testimony that Hayden perhaps left his entire estate to
Kingsley). Â In our view, redacting the
specific bequests was an effective method of accomplishing the limited purposes
for which the will was admitted.Â  In Meuth, the trial court admitted an
insurance certificate into evidence for the limited purpose of demonstrating
ownership and control of a particular company.Â 
The policy limits were redacted because they were not relevant to the
issue of ownership and control and were prejudicial as to the issue of damages.
Â Id.
at 629. Â The same reasoning applies
here.Â  The specific bequests to Cindy and
to Beck were not relevant to the issue of KingsleyÂs omission from the will;
the rule of optional completeness does not require the inclusion of these
bequests.

Â Â Â Â Â Â Â Â Â Â Â  We overrule
this point of error.Â  

Â 

Â Â Â Â Â Â Â Â Â Â Â  B.Â Â Â Â Â Â Â  Relevance
of Specific Bequests 

Â 

Â Â Â Â Â Â Â Â Â Â Â  Dale claims
the unredacted will should have been admitted because evidence of its specific
bequests met the requirements of Rule 401 of the Texas Rules of Evidence.Â  Rule 401 defines relevant evidence as Âevidence
having any tendency to make the existence of any fact that is of consequence to
the determination of the action more probable or less probable than it would be
without the evidence.Â Â Tex. R. Evid. 401. Â Rule 402 provides that evidence which is not relevant
is inadmissible. Â Tex. R. Evid. 402.

Â Â Â Â Â Â Â Â Â Â Â  In support
of his assertion of relevance, Dale maintains that he was not permitted to
answer the estateÂs closing argument:

But thereÂs a tendency sometimes to get inpatient [sic]
with your children, but that doesnÂt justify - - - doing to a son what this man
has done to his son.Â  ThatÂs
terrible.Â  ItÂs not acceptable.Â  ItÂs not right.Â  And the fact is he told a lie.Â  He said he didnÂt sign the deeds.Â  Science said he did.

Â 

Dale maintains that had the entire, unredacted will been in
evidence, this argument could have been answered by reminding the jury that
Hayden disinherited his only child.Â  This
case was not about HaydenÂs disinheritance of his daughter; it was about forgery.Â Â  Evidence that Hayden left his only child out
of his will is not relevant in proving that he forged his fatherÂs name on the
deeds.Â  The specific bequests in HaydenÂs
will say nothing about the dynamics of any motivation he allegedly had to forge
the deeds executed some two years prior to the will.Â Â Â Â Â Â  

Â Â Â Â Â Â Â Â Â Â Â  The jury
argument did not make the unredacted will relevant to the issue of
forgery.Â  This argument appears to relate
to the fact that Dale sued his son, claiming Hayden forged the deeds in
question.Â  Counsel refers to this as
Âunacceptable.ÂÂ  If Dale believed this
argument to be outside the scope of the evidence presented or otherwise
erroneous, his remedy was to object, ask the court to instruct the jury to
disregard counselÂs statement, and move for a mistrial if necessary.Â  This he did not do.Â  We cannot conclude that evidence of HaydenÂs
unredacted will tends to make the likelihood that Hayden forged the quitclaim
deeds more probable or less probable than it would be without this evidence.[7]

Â Â Â Â Â Â Â Â Â Â Â  C.Â Â Â Â Â Â Â  Rule
403

Â 

Â Â Â Â Â Â Â Â Â Â Â  The estate
maintains on appeal that even if HaydenÂs unredacted will was relevant, it was
properly excluded under Rule 403 of the Texas Rules of Evidence.Â  We agree.Â 
Rule 403 provides that relevant evidence Âmay be excluded if its
probative value is substantially outweighed by the danger of unfair prejudice,
confusion of the issues, or misleading the jury, or by considerations of undue
delay, or needless presentation of cumulative evidence.ÂÂ  Tex.
R. Evid. 403.Â  When a party
objects under Rule 403, a trial court must conduct a balancing test, weighing
the danger of prejudice against the probative value of the evidence.Â  Waldrep
v. Tex. Employers Ins. AssÂn, 21 S.W.3d 692, 703 (Tex. App.ÂAustin 2000,
pet. denied).Â  The redacted portions of
the will would have informed the jury that Hayden left his entire estate to his
friend Beck.Â  We have agreed that the
probative value of this evidence on the issue of forgery was minimal.Â  The trial court was within its discretion to
conclude that any perceived probative value it may have had was substantially
outweighed by the risk of unfair prejudice.Â 
We also note that any error in the exclusion of evidence is not
reversible unless the error Âprobably caused the rendition of an improper
judgment.ÂÂ  State v. Cent. Expressway Sign Assocs., 302 S.W.3d 866, 870 (Tex.
2009).Â  Here, Dale does not present
argument or briefing that this evidentiary ruling Âprobably caused the
rendition of an improper judgment.Â

IV.Â Â Â Â Â Â  Conclusion

Â 

Â Â Â Â Â Â Â Â Â Â Â  The trial court did not abuse
its discretion in excluding HaydenÂs unredacted will from evidence.Â  We affirm the judgment of the trial court.

Â 

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Jack
Carter

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 

Date Submitted:Â Â Â Â Â Â Â Â Â  May
5, 2011

Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â  June
7, 2011Â Â Â  

Â 

Â 

Â 

Â 

Â 

Â 











[1]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization efforts. Â See Tex. GovÂt Code Ann. Â§ 73.001 (Vernon
2005).Â  We are unaware of any conflict
between precedent of the Twelfth Court of Appeals and that of this Court on any
relevant issue. Â See Tex.
R. App. P. 41.3. 

Â 





[2]The
parties were realigned prior to commencement of trial so that Kingsley was
named as a plaintiff, together with Russell.Â 


Â 





[3]Dale
sought to introduce HaydenÂs will to show that Trey Beck was the sole
beneficiary of the will and that Hayden did not leave anything to his
daughter.Â  Dale argued to the trial court
that the estate had taken the position that it was Âunbelievable, that Dale
Russell would not leave anything to his only child and that is exactly what
Hayden Russell did.ÂÂ  The court indicated
that to the extent the estate Âgoes into statements or arguments that what kind
of person would leave their child or one of their children or all of their
children out of that will, then you can come back and balance that out with this
information.ÂÂ  

Â 





[4]HaydenÂs
transcribed testimony for the earlier trial was read to the jury without
objection.Â  That testimony revealed that
after Dale signed the quitclaim deeds, Hayden delivered the deeds to Kingsley
to place in her safety deposit box.Â  When
Hayden delivered the deeds to Kingsley, he testified that he also delivered a
will, Âwilling everything in my possession to her so if something happened to
me, someone else wouldnÂt get, you know, a part of that property.ÂÂ  

Â 





[5]HaydenÂs
actual will left his entire estate (with the exception of a one dollar bequest
to Cindy) to his friend Trey Beck, who was also named the executor of HaydenÂs
estate.Â Â  

Â 





[6]The
trial court stated that it was Âletting him put in the will not on the basis of
his conversation with the Attorney Farrell but strictly on the basis of the
testimony of Mr. Hayden Russell about the will leaving . . . everything to
Loretta [Kingsley] . . . .ÂÂ  The court
went on to say that Âthe fact that the daughter gets $1 is not really pertinent
. . . . but the fact that the sisterÂs left out, I think, is.ÂÂ  

Â 





[7]To
the extent Dale maintains the unredacted will should have been admitted for the
purpose of establishing the proper parties (or the real parties in interest),
that concern was addressed in the admission of the redacted will; it shows the
identity of the beneficiaries, but does not show the bequests to those
beneficiaries.