Arlington Joseph PITTE, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–02–00079–CR.

Court of Appeals of Texas, Texarkana.

Submitted Dec. 3, 2002.

Decided March 21, 2003.

Mark C. Thering, Houston, for appellant.

Lori DeAngelo Fix, Assistant District Attorney, William J. Delmore III, Harris County Assistant District Attorney, Houston, for appellee.

Before MORRISS, C.J., ROSS and CORNELIUS,* JJ.

## OPINION

Opinion by Justice CORNELIUS (Retired).

A jury in the 182nd Judicial District Court of Harris County convicted Arlington Joseph Pitte of robbery. The trial court sentenced him to thirty years' confinement. On appeal, Pitte contends that the judgment should be reversed because the prosecution used a peremptory challenge to remove an African–American venireman from the venire panel, and that the evidence is legally and factually insufficient to prove that Pitte (1) threatened the complainant with imminent harm, (2) placed the complainant in fear of imminent

bodily injury or death, and (3) was the person who committed the robbery. We overrule these contentions and affirm the judgment.

The State's evidence showed that, on October 19, 2001, Gail Venzant, accompanied by her mother and her four-year-old daughter, drove to the bank and cashed a $420.00 check. Venzant took $200.00 and folded it into her electric bill and put the remaining $220.00 in her coin purse. Venzant drove by a food market, then dropped off her mother at home, and then she and her daughter drove to a car wash. On arriving at the car wash, Venzant noticed a number of other people there, including Pitte, who was standing near the vacuums. While Venzant was washing her car, the other people at the car wash left. Pitte then approached Venzant and asked her if she needed help washing her car. Venzant responded that she did not. Pitte then opened the driver's side of Venzant's car and grabbed her purse and keys from the driver's side floorboard. Venzant walked to the driver's side and told Pitte to put down her purse and keys. Pitte replied, "Bitch, you'd better move or I'll knock you out." Venzant tried to spray Pitte with the car wash spray gun, but missed. Pitte then fled with Venzant's purse and keys.

An acquaintance of Venzant arrived at the car wash, discovered what had happened, and went in the direction that Pitte fled. The acquaintance informed police who were en route to the scene of the robbery. Officers W.L. Wilson and G.W. Smith chased after Pitte and apprehended him after just a few minutes.

Wilson's search of Pitte revealed $220.00 in cash in his pocket. Venzant positively identified Pitte as the man who had robbed her. Subsequently, Pitte was indicted for robbery by committing theft while threat-

---

* William J. Cornelius, C.J., Retired, Sitting by Assignment.

ening Venzant and placing her in fear of imminent bodily injury and death.

In his first point on appeal, Pitte contends the trial court erred by failing to discharge the jury panel after Pitte charged that the prosecution had exercised a peremptory challenge to exclude an African–American venire person on the basis of his race. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

■ The trial court's ruling on a *Batson* challenge is a finding of fact and will be overturned on appeal only on a finding that the decision was clearly erroneous. *Guzman v. State,* 85 S.W.3d 242, 254 (Tex. Crim.App.2002); *Williams v. State,* 804 S.W.2d 95, 101 (Tex.Crim.App.1991). A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court is left with "the definite and firm conviction that a mistake has been committed." *DeBlanc v. State,* 799 S.W.2d 701, 713 (Tex.Crim.App.1990); *Whitsey v. State,* 796 S.W.2d 707, 721 (Tex. Crim.App.1989) (op. on reh'g) (quoting *Anderson v. Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).

■ We must review the racial makeup of the venire, the voir dire examination, the prosecutor's explanations, and the appellant's rebuttal and impeachment evidence in a light most favorable to the trial court's ruling. *See Guzman v. State,* 85 S.W.3d at 254; *Williams v. State,* 804 S.W.2d at 101–02. We accord great deference to the trial court's findings of fact.

*Batson v. Kentucky,* 476 U.S. at 98 n. 21, 106 S.Ct. 1712; *see Robinson v. State,* 851 S.W.2d 216 (Tex.Crim.App.1991).

■ The Equal Protection Clause of the United States Constitution prohibits a party from using peremptory challenges to exclude otherwise qualified and unbiased persons from a jury solely on the basis of their race. *Batson v. Kentucky,* 476 U.S. at 88, 106 S.Ct. 1712. The Texas Legislature has codified the *Batson* rule in TEX. CODE CRIM. PROC. ANN. art. 35.261 (Vernon 1989).

■ Three steps constitute a proper *Batson* challenge. *Ford v. State,* 1 S.W.3d 691, 693–94 (Tex.Crim.App.1999) (citing *Purkett v. Elem,* 514 U.S. 765, 767–69, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995)). First, the party making the *Batson* claim must show a prima facie case of racial discrimination.[1] A prima facie case of discrimination may be made by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose.[2] *Batson v. Kentucky,* 476 U.S. at 93–94, 106 S.Ct. 1712. Second, the proponent of the strike must rebut the opponent's prima facie case and come forward with a race-neutral reason for the strike. *Id.* at 94, 106 S.Ct. 1712; *Williams v. State,* 937 S.W.2d 479, 485 (Tex.Crim.App.1996). This explanation need not be persuasive or even plausible. *Purkett v. Elem,* 514 U.S. at 768, 115 S.Ct. 1769. Thus, if the proponent of the strike produces a race-neutral reason for the strike, the court determines whether the movant carried its burden of persuasion by proving purposeful discrimi-

**1.** Here, Pitte did not establish a prima facie case of purposeful discrimination. However, since the State proceeded to give a race-neutral explanation for the peremptory strike and the trial court ruled on the matter, we should review the issue. *See Hernandez v. New York,* 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); *Hill v. State,* 827

S.W.2d 860, 865 (Tex.Crim.App.1992). The issue of Pitte's prima facie case is moot. *Hernandez v. New York,* 500 U.S. at 359, 111 S.Ct. 1859; *Hill v. State,* 827 S.W.2d at 865.

**2.** *See Batson v. Kentucky,* 476 U.S. 79, 94–95, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

nation. *Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); *Purkett v. Elem,* 514 U.S. at 767, 115 S.Ct. 1769. In this final step, the critical issue becomes the persuasiveness of the proponent's reason. *Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931; *Purkett v. Elem,* 514 U.S. at 768, 115 S.Ct. 1769.

■ To determine if the reason is supported by the record, we consider whether the reason offered as a basis for the peremptory strike was not related to the case, whether there was a lack of meaningful questioning of the venire person in question, whether there was disparate treatment or examination of persons with similar characteristics as the challenged venire person, and whether there is historical evidence of racial discrimination. *See Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931; *Williams v. State,* 804 S.W.2d at 101. Among the race-neutral explanations that have defeated a *Batson* challenge is a concern regarding the venire person's response to a relevant hypothetical question. *Joseph v. State,* 916 S.W.2d 657, 658–59 (Tex.App.-Houston [14th Dist.] 1996, no pet.).

■ The record here does not indicate the number of African–American venire persons who were within the strike range or the number of African–Americans who served on the jury. The State's race-neutral explanation of the strike involved the venire person's propensity to be sympathetic to a defense of being in "the wrong place at the wrong time." Pitte's defense at trial was similar to a "wrong time and wrong place" defense. Thus, the record does support the State's race-neutral explanation for striking the venire person.

After the State offered this explanation as a race-neutral basis for striking the venire person, Pitte offered nothing to prove or suggest that this explanation was a pretext or a sham and, thus, he did not carry his burden of persuasion. When the trial court is offered no evidence in rebuttal of the State's race-neutral explanation, the reviewing court is not in a position to say that it feels a definite and firm conviction that the trial court made a mistake. *Ford v. State,* 1 S.W.3d at 693. The trial court's denial of the *Batson* challenge was not clearly erroneous.

■ In his second and third points, Pitte contends the State's evidence is legally and factually insufficient to prove that he threatened Venzant with imminent bodily harm. When we review a challenge to the legal sufficiency of the evidence, we view the evidence in a light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Kutzner v. State,* 994 S.W.2d 180, 184 (Tex.Crim.App.1999); *Williams v. State,* 827 S.W.2d 614, 616 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd). When we review the factual sufficiency of the evidence, we review all of the evidence as a whole, not in a light most favorable to the trial court's finding. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996). We will find the evidence factually insufficient if it is so weak as to be clearly wrong or unjust or if the finding is against the great weight and preponderance of the evidence produced at trial. *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App. 2000). We will give the fact-finder a great amount of deference because it is in the best position to judge the weight and credibility of the witnesses. *Clewis v. State,* 922 S.W.2d at 133. The fact-finder is free to accept or reject all or any part of the testimony. *Lehman v. State,* 727 S.W.2d 656, 659–60 (Tex.App.-Houston [1st Dist.] 1987), *aff'd,* 792 S.W.2d 82 (Tex.Crim.App. 1990); *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex.Crim.App. [Panel Op.] 1981).

■ Pitte contends the evidence is insufficient to show that Venzant was threatened with imminent harm as required by statute because the threat allegedly made by him was conditional rather than imminent.[3]

■ Threats of future harm may not be sufficient to reasonably place another in fear of imminent bodily injury or death. *See Devine v. State*, 786 S.W.2d 268, 270 (Tex.Crim.App.1989). Under certain circumstances, however, threats that may sound conditional or speak of future harm can satisfy the element of robbery. *See Green v. State*, 567 S.W.2d 211 (Tex. Crim.App. [Panel Op.] 1978). When examining a conditional threat to determine whether it involves future harm or imminent harm, the courts will consider the remoteness of the occurrence of the condition and the present capability of the accused to carry out the threat. *Devine v. State*, 786 S.W.2d at 270; *Green v. State*, 567 S.W.2d at 211.

In *Green*, the appellant threatened the complainant with the words, "If you don't give me the money, I'm going to cave your head in." *Green v. State*, 567 S.W.2d at 212. Green argued that the threat was one that involved only future harm and was, therefore, insufficient to constitute a threat of imminent bodily injury or death. *Id.* at 213. However, since the complainant was in a face-to-face confrontation with Green and Green's companion, the court found that the threat was sufficient to make the offense robbery. The court reasoned that, had the complainant not complied with Green's request, the harm was to be inflicted immediately. *Id.*

Venzant testified that she and her daughter were alone at the car wash with Pitte and that he threatened to "knock [her] out" if she did not acquiesce to his taking her purse and keys. Considering the fact that Pitte was only three to four feet away from Venzant, it is reasonable to believe that he had the current ability to injure her if she did not move away and let him accomplish his theft. Unlike the threat in *Devine*, the threat here involved consequences that were to occur immediately if she did not comply with his demand. In *Devine*, the threat involved harm that would occur at an indefinite time and place had the complainant not met the appellant's demands. Pitte's threats to Venzant more closely resemble those in *Green*, where the complainant was alone in a hotel room with Green and another who appeared to be able to "cave [his] head in" at that point in time and at that location had the complainant not complied.

Viewing the facts in a light most favorable to the verdict, we find the evidence legally sufficient to find beyond a reasonable doubt that Pitte threatened Venzant with imminent, rather than future, harm when he made the threat. Viewing all the evidence in a neutral light, we find it factually sufficient on this issue as well.

■ In his fourth and fifth points, Pitte challenges the legal and factual sufficiency of the evidence to show that Pitte placed Venzant in fear of imminent bodily injury or death, as required by TEX. PEN.CODE ANN. § 29.02 (Vernon 2003).

■ A person commits robbery if in the course of committing theft, he "intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." TEX. PEN.CODE ANN. § 29.02(a)(2). The accused need not ex-

---

**3.** Robbery can be committed by either threatening *or* by placing another in fear of imminent bodily injury or death. *See Vaughn v.* *State*, 634 S.W.2d 310, 312 (Tex.Crim.App. [Panel Op.] 1982).

pressly threaten another or display a weapon to commit robbery. *See Williams v. State*, 827 S.W.2d at 616; *Welch v. State*, 880 S.W.2d 225, 227 (Tex.App.-Austin 1994, no pet.). It is sufficient to constitute robbery if the accused places the complainant in fear of bodily injury or death to the degree that "reason and common experience" will likely induce the complainant to part with his property against his will. *Devine v. State*, 786 S.W.2d at 270; *Cranford v. State*, 377 S.W.2d 957, 958 (Tex. Crim.App.1964) (citing *Easley v. State*, 82 Tex.Crim. 238, 199 S.W. 476 (1917)).

In *Cranford*, the defendant committed robbery when he approached a cashier in a grocery store, handed her a note reading, "Give me your money," verbally assured the cashier that he was not joking, and made a gesture that the cashier thought was a reach for a weapon. *Cranford v. State*, 377 S.W.2d at 958. A robbery conviction was also upheld when the defendant was not armed and made no express threats, but his demands for money and "generally aggressive manner" were enough to place a reasonable person in fear of imminent bodily injury or death. *Welch v. State*, 880 S.W.2d at 227.

Here, the threat, "Bitch, you'd better move or I'll knock you out" in conjunction with Pitte's proximity and the other circumstances were sufficient to place Venzant in fear of imminent bodily injury or death. Like the complainant in *Green*, Venzant was reasonable in fearing that, if she did not comply with Pitte's demand, harm would follow immediately. Venzant testified that she felt afraid when Pitte threatened her. As a reaction to that fear, she says, she tried to protect herself by spraying Pitte with the car wash spray gun. She testified she believed that Pitte was going to hurt her in some way. She said she did not know if he had a knife or a gun "or what." Reason and common expe-

rience suggest that this set of circumstances would place Venzant in fear likely to induce her to part with her property against her will.

Pitte argues that Venzant was not placed in fear by the words he spoke to her. He points to the fact that she swung the spray gun at him as evidence that she was not afraid. Venzant, however, testified positively that she became afraid after hearing the threat and believed that Pitte would hurt her in some way.

■ The jury observes the demeanor of the witnesses and has the authority to judge the witnesses' credibility and determine the weight to give their testimony. *See Penagraph v. State*, 623 S.W.2d at 343. From a review of all the evidence, we conclude that the evidence is legally and factually sufficient to support the finding that Venzant was placed in fear of bodily injury or death.

■ In his sixth and seventh points of error, Pitte asserts that the State did not produce legally or factually sufficient evidence to rebut his defense of mistaken identity.

■ As the State points out, mistaken identity is not a defense. *See Giesberg v. State*, 984 S.W.2d 245 (Tex.Crim. App.1998). It is a defensive theory offered to negate the identity element of the offense. *Giesberg v. State*, 945 S.W.2d 120, 124 (Tex.App.-Houston [1st Dist.] 1996), *aff'd*, 984 S.W.2d 245 (Tex.Crim.App.1998). The State carries its burden in a criminal case if it proves each element of the offense beyond a reasonable doubt, but it is not required to rebut an accused's defensive theory beyond a reasonable doubt. As did the court in *Giesberg*, we treat this as a challenge to the sufficiency of the evidence to prove Pitte's identity beyond a reasonable doubt. *Id.*

The State produced more than ample evidence that Pitte was the individual who

robbed Venzant. Venzant testified that she noticed Pitte at the car wash before the incident. She watched him as he approached her and asked if she wanted help washing her car. Nothing hindered Venzant's view of Pitte's face. Venzant testified that it was a clear day, and that she has no vision problems and does not wear glasses. Pitte did not wear anything to cover his face. She testified that no one else was present at the car wash when the robbery occurred. She provided the acquaintance who arrived later and the police with the direction in which Pitte ran and with his description. A man running in that same direction and fitting that description was found by police. Thirty minutes after the events, Venzant identified Pitte as the man who robbed her. Pitte was carrying $220.00 in his pocket that matched the amount and denomination of the money Venzant said was taken from her.

The jury heard Venzant's own testimony regarding the identity of the man who robbed her. Other evidence supports that identification, but the only one who testified to the identity of the robber and who was actually present at the time of the robbery was Venzant. A conviction may be based on the testimony of a single eyewitness. See *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex.Crim.App.1971). There is additional identification evidence here, however.

In response to Venzant's testimony that Pitte was the man who robbed her, Pitte asserted that the guilty person is Michael Johnson, an acquaintance who was with him at the car wash and who is about his same height and weight. Pitte said the money was from the amount his mother had paid him the day before for doing work around her house. His mother testified that she had given him $289.00 for doing some work on the house. Pitte ran, he said, because he saw Johnson take Venzant's keys and start running. He did not want to get involved "in that jam." Additionally, Pitte questions the reliability of Venzant's identification because she failed to point out the many visible tattoos he has.

Granted, Pitte has offered some evidence that he is not the individual who robbed Venzant. Evidence corroborating Venzant's identification of Pitte as the robber, however, is abundant. Both investigating officers testified that, before he had an opportunity to change, Pitte's clothes matched the description Venzant gave as to how he was dressed; Pitte was seen running from the car wash immediately after the robbery; police apprehended him shortly after they followed after him in the direction he ran; Pitte had the exact amount of money and the exact same denomination of money when he was apprehended that Venzant said he took from her; and Venzant identified Pitte again from a photographic spread she viewed just before trial. We find legally and factually sufficient evidence identifying Pitte as the person who robbed Venzant.

For the reasons stated, we affirm the judgment.