COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-371-CR
  
  
TONY 
LANE GREGORY                                                           APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM 
THE 297TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
 
I. Introduction
        Appellant 
Tony Lane Gregory appeals his convictions for aggravated sexual assault and 
aggravated assault with a deadly weapon.  A jury found Gregory 
guilty.  The trial court sentenced him to forty years’ confinement for 
the aggravated sexual assault and twenty years’ confinement for the aggravated 
assault with a deadly weapon.  In two points, Gregory challenges the legal 
and factual sufficiency of the evidence to establish that he was the individual 
who committed the offenses charged in the indictment.  We will affirm.
II. Background 
Facts
        Roberta 
Parrish testified that on or about April 26, 2001, she was walking down Vickery 
when a white man driving a gold sport utility vehicle pulled in and asked her if 
she wanted a “ride.”[2]  She accepted the 
“ride,” got in the vehicle, and negotiated a price for performing oral 
sex.  They drove to a secluded area off Tucker Street, and he demanded that 
she exit the vehicle.  When she refused, he displayed a gun and told her to 
exit the vehicle on her side.  He followed her out the passenger-side door 
and pushed her down a grass embankment.  He then forced her to undo her 
pants, all the while hitting her in the head with the gun.  He penetrated 
her anus with his penis while continuing to hit her in the head with the 
gun.  She began to scream for Richard and Floyd, two friends who lived in 
the neighborhood by Tucker Street.
        The 
man then dragged her across the street, pulling her by the shirt.  She 
maneuvered out of her shirt and ran, but he caught her and took off her 
pants.  He then grabbed her by the hair and dragged her on her back across 
the street to a log.  He penetrated her again anally with his penis, while 
continuing to hit her on the head.
        She 
said that suddenly there were lots of lights, and she ran toward them.  An 
ambulance transported her to John Peter Smith Hospital (“JPS”) where her 
head wounds were stapled shut and the wounds to her back were bandaged.
        She 
described the man who raped her as wearing shorts and a T-shirt and having short 
hair.  She believed that he would kill her and that the object he put in 
her face was a gun.  She stated that he had anal sex with her without her 
permission.
        Connie 
Hicks testified that on or about April 26, 2001, she lived at 1823 East Tucker 
in Fort Worth. That night, at around 11:00 o’ clock or midnight, she heard a 
woman screaming like she was being hurt.  Connie and her husband walked 
outside and noticed someone kneeling beside a nearby telephone pole,[3] so Connie called the police.  An ambulance arrived, 
and Connie saw a white male wearing a light-colored T-shirt and light-colored 
jeans jump off of a girl, turn around, look at them, zip his pants, and run 
toward the woods.  The victim got up and ran toward Connie and the other 
neighbors who had gathered.  Connie testified that she recognized the 
victim as “Jenny,”[4] a prostitute who worked in 
the neighborhood, and that “Jenny” was bloody, naked, in tears, and a mess.
        David 
Hicks testified that he heard screams between 10:00 and 11:00 p.m. on the night 
in question.  He and his wife went outside, and two people who were 
visiting a neighbor also came outside.  He stated that his wife called 
911.  He said that he saw a black Isuzu Rodeo and shined a flashlight at 
it.  He mentioned that he and his wife thought that they saw someone 
standing near a telephone pole, but that it was just the way the trees looked.
        An 
ambulance arrived, and David saw a man stand up, turn around to face them, zip 
his zipper, and run toward some trees.  He described the white male as 
being medium height and stocky, having low-cut hair, and wearing khaki, 
cream-colored pants and a white shirt.  He also saw “Jenny” run toward 
him when the ambulance arrived.  As EMTs treated “Jenny,” David talked 
to Officer McGraw who had arrived at the scene.  Police took David to four 
patrol cars a single suspect was being held in each car.  David identified 
the man he saw as the male in the fourth car, wearing tan pants and a white 
T-shirt with blood all over it.  He also described the man in the fourth 
car as having blondish-brown hair and no facial hair.
        Officer 
Stufflebeme testified that when he arrived at the scene, he began panning his 
spotlight across the area.  He then saw a white female running from the 
wooded area toward the patrol car.  She was naked and covered with 
blood.  He also saw a male in a white T-shirt running the opposite 
direction, toward the wooded area.  He radioed for additional units to set 
a perimeter around the wooded area because it appeared that a sexual assault had 
occurred.  The female told him that she had been assaulted by a white male 
wearing a white T-shirt with blue letters and khaki pants.
        Officer 
Ufkus testified that he was called late on the night of April 26, 2001 and into 
the early morning hours of April 27, 2001 to search for an individual who had 
possibly committed a sexual assault near Cromwell Street.  He knew the 
suspect was a white male wearing a white T-shirt and beige shorts.  When he 
arrived at the scene, he exited his patrol car and went east toward the wood 
line because he heard noises in the woods. He announced himself, and the noises 
stopped.  Using his flashlight, he found a white male, lying under a 
bush.  The male matched the description—wearing a white T-shirt and tan 
or beige knee-length shorts—so Officer Ufkus arrested him.  Officer Ufkus 
identified Gregory in court as the person he found under the bushes and stated 
that he did not find anyone else in the woods that night.
        Officer 
McGraw testified that he was dispatched to the 1800 block of East Tucker.  
Based on the information provided by dispatch, he proceeded to look for a white 
male wearing a light-colored T-shirt with blue lettering on it and khaki 
shorts.  He learned that Officer Ufkus had taken a suspect into custody, so 
he returned to the crime scene.  The man was a white male with short hair 
and a clean cut appearance, wearing a white-colored shirt with blue lettering 
and khaki shorts.  Officer McGraw noted that the man had some abrasions on 
his lower legs.  Officer McGraw identified the person who was arrested at 
the scene as Gregory.
        Officer 
Thompson with the Crime Scene Search Unit testified that he received a call at 
12:23 a.m. on April 27, 2001 to go to 600 Cromwell in reference to a sexual 
assault that occurred there.  When he arrived, Officer McGraw and he walked 
through the crime scene.  Officer Thompson stated that he saw a brown or 
gray Isuzu Rodeo parked nearby and that a knife, a pair of athletic shoes, and a 
pair of jeans were on the grass beside the vehicle.  He also saw a red 
shirt and a used condom in the roadway behind the vehicle.  Approximately 
thirty feet off the road, there was a large area of what appeared to be blood 
behind a log.  Officer Thompson took photos of the scene, made a rough 
sketch of the scene, and collected and marked the evidence.  He also took 
photos of the captured suspect and collected the suspect’s shirt.  He 
noted that the suspect’s shirt had blue writing on the front and appeared to 
have blood stains on it.
        Donna 
Duclow, a sexual assault nurse examiner at JPS, testified that she performed an 
anal exam on Parrish and thereafter drew blood from Parrish for DNA 
testing.  She also testified that Parrish told her that she thought the 
perpetrator’s name was Troy.
        Carolyn 
VanWinkle from the DNA lab section of the Tarrant County Medical Examiner’s 
Office testified that she reviewed fourteen items of evidence and biological 
material associated with this case.  She performed DNA analysis on 
Parrish’s blood sample, a fabric cutting from Gregory’s white T-shirt, a 
swab from the outside of the condom found at the scene, a swab from the inside 
of the condom, and swabs from Gregory’s mouth.  Her testing revealed that 
the cutting from the white T-shirt contained human DNA that tested positive for 
blood.  She compared the human DNA on the white T-shirt to known samples 
from Parrish and Gregory, and the human DNA on Gregory’s white T-shirt matched 
Parrish’s profile.  However, the DNA on the condom did not match Parrish 
or Gregory.
III. Legally 
and Factually Sufficient Evidence
        In 
his first and second points, Gregory argues that the State failed to present 
legally and factually sufficient evidence to establish that he was the 
individual who committed the offenses charged in the indictment.  The State 
argues that the circumstantial evidence that was presented to the jury is both 
legally and factually sufficient to establish that Gregory is the perpetrator.[5]  We agree with the State.
        In 
reviewing the legal sufficiency of the evidence to support a conviction, we view 
all the evidence in the light most favorable to the verdict in order to 
determine whether any rational trier of fact could have found the essential 
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Burden v. State, 55 
S.W.3d 608, 612 (Tex. Crim. App. 2001).  This standard gives full play to 
the responsibility of the trier of fact to resolve conflicts in the testimony, 
to weigh the evidence, and to draw reasonable inferences from basic facts to 
ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct. at 2789.  
When performing a legal sufficiency review, we may not sit as a thirteenth 
juror, re-evaluating the weight and credibility of the evidence and, thus, 
substituting our judgment for that of the fact finder.  Dewberry v. 
State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 
U.S. 1131 (2000).
        In 
reviewing the factual sufficiency of the evidence to support a conviction, we 
are to view all the evidence in a neutral light, favoring neither party.  See 
Zuniga v. State, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only 
question to be answered in a factual sufficiency review is whether, considering 
the evidence in a neutral light, the fact finder was rationally justified in 
finding guilt beyond a reasonable doubt.  Id. at 484.  There 
are two ways evidence may be factually insufficient: (1) the evidence supporting 
the verdict or judgment, considered by itself, is too weak to support the 
finding of guilt beyond a reasonable doubt; or (2) when there is evidence both 
supporting and contradicting the verdict or judgment, weighing all of the 
evidence, the contrary evidence is so strong that guilt cannot be proven beyond 
a reasonable doubt.  Id. at 484-85.  “This standard 
acknowledges that evidence of guilt can ‘preponderate’ in favor of 
conviction but still be insufficient to prove the elements of the crime beyond a 
reasonable doubt.”  Id. at 485.  In other words, evidence 
supporting a guilty finding can outweigh the contrary proof but still be 
insufficient to prove the elements of an offense beyond a reasonable 
doubt.  Id.
        In 
performing a factual sufficiency review, we are to give deference to the fact 
finder’s determinations, including determinations involving the credibility 
and demeanor of witnesses.  Id. at 481; Cain v. State, 958 
S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment 
for that of the fact finder’s.  Zuniga, 144 S.W.3d at 482.
        A 
proper factual sufficiency review requires an examination of all the 
evidence.  Id. at 484, 486-87.  An opinion addressing factual 
sufficiency must include a discussion of the most important and relevant 
evidence that supports the appellant’s complaint on appeal.  Sims v. 
State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).
        Here, 
the victim testified at trial that the man who raped her was wearing shorts and 
a T-shirt and that he had short hair.  Connie Hicks testified that she saw 
a white male wearing a light-colored T-shirt and light-colored jeans jump off of 
a girl whom she recognized.  David Hicks described the perpetrator as a 
white male of medium height, stocky build, and low-cut hair, wearing khaki, 
cream-colored pants and a white shirt.  Officer Stufflebeme testified that 
the victim told him on the night of the offense that she had been assaulted by a 
white male wearing a white T-shirt with blue letters and khaki pants.
        Officer 
Ufkus found a white male hiding in the woods under a bush who was wearing a 
white T-shirt and tan or beige knee-length shorts. He did not find anyone else 
in the woods that night.  Officer McGraw testified that the suspect taken 
into custody was a white male with short hair and a clean-cut appearance, 
wearing a white-colored shirt with blue lettering and khaki shorts.  
Officer Thompson took photos of the suspect and collected his shirt, noting that 
the shirt had blue writing on the front and appeared to have blood stains on 
it.  DNA testing on the cutting from Gregory’s white T-shirt revealed 
that it contained human DNA matching Parrish’s profile.
        Thus, 
viewing the evidence in the light most favorable to the verdict, we hold that a 
rational trier of fact could have found the essential elements of the offense 
beyond a reasonable doubt.  Jackson, 443 U.S. at 319, 99 S. Ct. at 
2789; Burden, 55 S.W.3d at 612; Pitte v. State, 102 S.W.3d 786, 
794 (Tex. App.—Texarkana 2003, no pet.) (holding that there was legally 
sufficient evidence identifying appellant as the person who robbed 
complainant).  Furthermore, viewing all the evidence in a neutral light, 
favoring neither party, we also conclude that the evidence supporting the 
verdict, taken alone, is not too weak to support the finding of guilt beyond a 
reasonable doubt and that the contrary evidence is not so strong that guilt 
cannot be proven beyond a reasonable doubt.  Dotson v. State, No. 
2-03-237-CR, 2004 WL 1944765, at *5 (Tex. App.—Fort Worth Sept. 2, 2004, no 
pet.); see also Pitte, 102 S.W.3d at 794 (holding that there was 
factually sufficient evidence identifying appellant as the person who robbed 
complainant).  Accordingly, we hold that the evidence is both legally and 
factually sufficient to support Gregory’s convictions for aggravated sexual 
assault and aggravated assault with a deadly weapon.  We overrule 
Gregory’s first and second issues.
IV. Conclusion
        Having 
overruled Gregory’s two issues, we sustain the trial court’s judgment.
  
  
                                                          SUE 
WALKER
                                                          JUSTICE
  
  
PANEL 
B:   HOLMAN, WALKER, and MCCOY, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
November 12, 2004


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
Parrish stated that she understood a “ride” to mean a “date,” which 
involved exchanging money for sex.
3.  
Connie retrieved a flashlight, but the man was gone when she returned so she did 
not get a good look at the man.  She said, however, that the male at the 
telephone pole was someone other than Gregory.
4.  
Connie has since learned that “Jenny” is actually named Roberta Parrish.
5.  
The State also argues that Gregory’s assertion at trial—that evidence of 
identity was not relevant because identity was not an issue—precludes his 
claim on appeal that the evidence of identity is insufficient.  Because the 
evidence of identity is legally and factually sufficient, we decline to decide 
whether the invited error doctrine may apply to a legal and factual sufficiency 
challenge to a particular element of the charged offense.