Tony Lane Gregory v. State

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-371-CR

TONY LANE GREGORY APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Tony Lane Gregory appeals his convictions for aggravated sexual assault and aggravated assault with a deadly weapon.  A jury found Gregory guilty.  The trial court sentenced him to forty years’ confinement for the aggravated sexual assault and twenty years’ confinement for the aggravated assault with a deadly weapon.  In two points, Gregory challenges the legal and factual sufficiency of the evidence to establish that he was the individual who committed the offenses charged in the indictment.  We will affirm
.

II.  Background Facts

Roberta Parrish testified that on or about April 26, 2001, she was walking down Vickery when a white man driving a gold sport utility vehicle pulled in and asked her if she wanted a “ride.”
(footnote: 2)  She accepted the “ride,” got in the vehicle, and negotiated a price for performing oral sex.  They drove to a secluded area off Tucker Street, and he demanded that she exit the vehicle.  When she refused, he displayed a gun and told her to exit the vehicle on her side.  He followed her out the passenger-side door and pushed her down a grass embankment.  He then forced her to undo her pants, all the while hitting her in the head with the gun.  He penetrated her anus with his penis while continuing to hit her in the head with the gun.  She began to scream for Richard and Floyd, two friends who lived in the neighborhood by Tucker Street.

The man then dragged her across the street, pulling her by the shirt.  She maneuvered out of her shirt and ran, but he caught her and took off her pants.  He then grabbed her by the hair and dragged her on her back across the street to a log.  He penetrated her again anally with his penis, while continuing to hit her on the head.

She said that suddenly there were lots of lights, and she ran toward them.  An ambulance transported her to John Peter Smith Hospital (“JPS”) where her head wounds were stapled shut and the wounds to her back were bandaged.

She described the man who raped her as wearing shorts and a T-shirt and having short hair.  She believed that he would kill her and that the object he put in her face was a gun.  She stated that he had anal sex with her without her permission.

Connie Hicks testified that on or about April 26, 2001, she lived at 1823 East Tucker in Fort Worth.  That night, at around 11:00 o’ clock or midnight, she heard a woman screaming like she was being hurt.  Connie and her husband walked outside and noticed someone kneeling beside a nearby telephone pole,
(footnote: 3) so Connie called the police.  An ambulance arrived, and Connie saw a white male wearing a light-colored T-shirt and light-colored jeans jump off of a girl, turn around, look at them, zip his pants, and run toward the woods.  The victim got up and ran toward Connie and the other neighbors who had gathered.  Connie testified that she recognized the victim as “Jenny,”
(footnote: 4) a prostitute who worked in the neighborhood, and that “Jenny” was bloody, naked, in tears, and a mess.

David Hicks testified that he heard screams between 10:00 and 11:00 p.m. on the night in question.  He and his wife went outside, and two people who were visiting a neighbor also came outside.  He stated that his wife called 911.  He said that he saw a black Isuzu Rodeo and shined a flashlight at it.  He mentioned that he and his wife thought that they saw someone standing near a telephone pole, but that it was just the way the trees looked.

An ambulance arrived, and David saw a man stand up, turn around to face them, zip his zipper, and run toward some trees.  He described the white male as being medium height and stocky, having low-cut hair, and wearing khaki, cream-colored pants and a white shirt.  He also saw “Jenny” run toward him when the ambulance arrived.  As EMTs treated “Jenny,” David talked to Officer McGraw who had arrived at the scene.  Police took David to four patrol cars a single suspect was being held in each car.  David identified the man he saw as the male in the fourth car, wearing tan pants and a white T-shirt with blood all over it.  He also described the man in the fourth car as having blondish-brown hair and no facial hair.

Officer Stufflebeme testified that when he arrived at the scene, he began panning his spotlight across the area.  He then saw a white female running from the wooded area toward the patrol car.  She was naked and covered with blood.  He also saw a male in a white T-shirt running the opposite direction, toward the wooded area.  He radioed for additional units to set a perimeter around the wooded area because it appeared that a sexual assault had occurred.  The female told him that she had been assaulted by a white male wearing a white T-shirt with blue letters and khaki pants.

Officer Ufkus testified that he was called late on the night of April 26, 2001 and into the early morning hours of April 27, 2001 to search for an individual who had possibly committed a sexual assault near Cromwell Street. He knew the suspect was a white male wearing a white T-shirt and beige shorts.  When he arrived at the scene, he exited his patrol car and went east toward the wood line because he heard noises in the woods.  He announced himself, and the noises stopped.  Using his flashlight, he found a white male, lying under a bush.  The male matched the description—wearing a white T-shirt and tan or beige knee-length shorts—so Officer Ufkus arrested him.  Officer Ufkus identified Gregory in court as the person he found under the bushes and stated that he did not find anyone else in the woods that night. 

Officer McGraw testified that he was dispatched to the 1800 block of East Tucker.  Based on the information provided by dispatch, he proceeded to look for a white male wearing a light-colored T-shirt with blue lettering on it and khaki shorts.  He learned that Officer Ufkus had taken a suspect into custody, so he returned to the crime scene.  The man was a white male with short hair and a clean cut appearance, wearing a white-colored shirt with blue lettering and khaki shorts.  Officer McGraw noted that the man had some abrasions on his lower legs.  Officer McGraw identified the person who was arrested at the scene as Gregory.

Officer Thompson with the Crime Scene Search Unit testified that he received a call at 12:23 a.m. on April 27, 2001 to go to 600 Cromwell in reference to a sexual assault that occurred there.  When he arrived, Officer McGraw and he walked through the crime scene.  Officer Thompson stated that he saw a brown or gray Isuzu Rodeo parked nearby and that a knife, a pair of athletic shoes, and a pair of jeans were on the grass beside the vehicle.  He also saw a red shirt and a used condom in the roadway behind the vehicle. Approximately thirty feet off the road, there was a large area of what appeared to be blood behind a log.  Officer Thompson took photos of the scene, made a rough sketch of the scene, and collected and marked the evidence.  He also took photos of the captured suspect and collected the suspect’s shirt.  He noted that the suspect’s shirt had blue writing on the front and appeared to have blood stains on it.

Donna Duclow, a sexual assault nurse examiner at JPS, testified that she performed an anal exam on Parrish and thereafter drew blood from Parrish for DNA testing.  She also testified that Parrish told her that she thought the perpetrator’s name was Troy.

Carolyn VanWinkle from the DNA lab section of the Tarrant County Medical Examiner’s Office testified that she reviewed fourteen items of evidence and biological material associated with this case.  She performed DNA analysis on Parrish’s blood sample, a fabric cutting from Gregory’s white T-shirt, a swab from the outside of the condom found at the scene, a swab from the inside of the condom, and swabs from Gregory’s mouth.  Her testing revealed that the cutting from the white T-shirt contained human DNA that tested positive for blood.  She compared the human DNA on the white T-shirt to known samples from Parrish and Gregory, and the human DNA on Gregory’s white T-shirt matched Parrish’s profile.  However, the DNA on the condom did not match Parrish or Gregory.

III.  Legally and Factually Sufficient Evidence

In his first and second points, Gregory argues that the State failed to present legally and factually sufficient evidence to establish that he was the individual who committed the offenses charged in the indictment.  The State argues that the circumstantial evidence that was presented to the jury is both legally and factually sufficient to establish that Gregory is the perpetrator.
(footnote: 5)  We agree with the State.

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  When performing a legal

sufficiency review, we may not sit as a thirteenth juror, re-evaluating the weight and credibility of the evidence and, thus, substituting our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
.
 at 484. There are two ways evidence may be factually insufficient:  (1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
. 
 In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 
at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that of the fact finder’s.  
Zuniga, 
144 S.W.3d at 482. 

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

Here, the victim testified at trial that the man who raped her was wearing shorts and a T-shirt and that he had short hair.  Connie Hicks testified that she saw a white male wearing a light-colored T-shirt and light-colored jeans jump off of a girl whom she recognized.  David Hicks described the perpetrator as a white male of medium height, stocky build, and low-cut hair, wearing khaki, cream-colored pants and a white shirt.  Officer Stufflebeme testified that the victim told him on the night of the offense that she had been assaulted by a white male wearing a white T-shirt with blue letters and khaki pants.

Officer Ufkus found a white male hiding in the woods under a bush who was wearing a white T-shirt and tan or beige knee-length shorts.  He did not find anyone else in the woods that night.  Officer McGraw testified that the suspect taken into custody was a white male with short hair and a clean-cut appearance, wearing a white-colored shirt with blue lettering and khaki shorts. Officer Thompson took photos of the suspect and collected his shirt, noting that the shirt had blue writing on the front and appeared to have blood stains on it.  DNA testing on the cutting from Gregory’s white T-shirt revealed that it contained human DNA matching Parrish’s profile.  

Thus, viewing the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789;
 Burden, 
55 S.W.3d at 612; 
Pitte v. State
, 102 S.W.3d 786, 794 (Tex. App.—Texarkana 2003, no pet.) (holding that there was legally sufficient evidence identifying appellant as the person who robbed complainant). Furthermore, viewing all the evidence in a neutral light, favoring neither party, we also conclude that the evidence supporting the verdict, taken alone, is not too weak to support the finding of guilt beyond a reasonable doubt and that the contrary evidence is not so strong that guilt cannot be proven beyond a reasonable doubt.  
Dotson v. State
, No. 2-03-237-CR, 2004 WL 1944765, at *5 (Tex. App.—Fort Worth Sept. 2, 2004, no pet.); 
see also Pitte
, 102 S.W.3d at 794 (holding that there was factually sufficient evidence identifying appellant as the person who robbed complainant)
.  Accordingly, we hold that the evidence is both legally and factually sufficient to support Gregory’s 
convictions for aggravated sexual assault and aggravated assault with a deadly weapon
.  
We overrule Gregory’s first and second issues.

IV.  Conclusion

Having overruled Gregory’s two issues, we sustain the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL B: HOLMAN, WALKER, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: November 12, 2004

FOOTNOTES
1:
See
 Tex. R. App. P
. 47.4
.

2:
Parrish stated that she understood a “ride” to mean a “date,” which involved exchanging money for sex.

3:
Connie retrieved a flashlight, but the man was gone when she returned so she did not get a good look at the man.  She said, however, that the male at the telephone pole was someone other than Gregory.

4:
Connie has since learned that “Jenny” is actually named Roberta Parrish.

5:
The State also argues that Gregory’s assertion at trial—that evidence of identity was not relevant because identity was not an issue—precludes his claim on appeal that the evidence of identity is insufficient.  
Because the evidence of identity is legally and factually sufficient, we decline to decide whether the invited error doctrine may apply to a legal and factual sufficiency challenge to a particular element of the charged offense.