

IN THE
TENTH COURT OF APPEALS

No. 10-12-00104-CR

BRANDON OKEITH HUTCHINS,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 361st District Court
Brazos County, Texas
Trial Court No. 10-03854-CRF-361

MEMORANDUM OPINION

In two issues, appellant, Brandon Hutchins, challenges his convictions for two

counts of aggravated robbery, a first-degree felony. *See* TEX. PENAL CODE ANN. §

29.03(a)-(b) (West 2011). We affirm.

I. BACKGROUND

In two counts, the indictment in this case alleged that appellant robbed Timothy

Murphy Jr. and Ashley Broussard, both employees of The Bank and Trust branch

located off of Highway 21 in Bryan, Texas. Witnesses asserted that appellant, a male,

robbed the bank while wearing a dress, ladies penny loafers, a wig, sunglasses, and carrying an umbrella. Murphy, an assistant vice-president and bank manager, testified that he observed appellant first enter the bank. According to Murphy, appellant struggled to enter the bank with an umbrella that was up. Murphy thought this odd because it was in the middle of August, and it was not raining at the time. After appellant entered the bank, Murphy noticed appellant's strange apparel. Murphy recounted that: "It was quite obvious that it was a male. It was from their body structure and the face."[1] Murphy further testified that although it was not normal to have men come into the bank dressed as women, it was not abnormal either. Murphy estimated that he had seen three men dressed as women come into his bank in Bryan in the last year.

Appellant proceeded to the teller counter where Broussard was working. As Broussard began filling out a deposit slip, appellant pointed a gun at her and demanded that she fill up a purse with money. Broussard followed appellant's instructions and filled the purse with approximately $12,000 to $13,000. As Broussard filled the purse with money, Murphy kept an eye on appellant. Murphy testified that he tried to keep eye contact with appellant, focusing on his eyes, mouth, and the structure of his face. Appellant's sunglasses were not so dark that they prevented Murphy from seeing his eyes. Murphy did not notice if appellant had any tattoos because he was focused on appellant's face and the gun.

---

[1] Or, in the words of Austin Powers, "That ain't no woman. It's a man, man!" AUSTIN POWERS: INTERNATIONAL MAN OF MYSTERY (New Line Cinema 1997).

Appellant then walked over to Murphy and demanded more money. Murphy filled the purse with another $12,000 to $13,000, which also included bait money that is traceable. Appellant inquired about the bank's safe; Murphy said that the safe was on a timer and could not be opened during business hours. Thereafter, appellant instructed Murphy and Broussard to lie down on the floor on the opposite end of the bank. Appellant repeatedly told Murphy and Broussard "to be still and to not get up or to look up" as he exited the bank. Murphy eventually heard appellant exit the bank. Afterwards, Murphy locked the bank and watched as appellant struggled to walk to the other side of Highway 21.[2] Broussard called the police.

Rolando Taylor, an oilfield worker, happened to be in the area at the time of the incident. Taylor noted that he was fueling up his vehicle at the Speedy Truck Stop on Highway 21 when he observed a woman walking with an umbrella even though it was not raining. Taylor recalled that the woman walked at a fast pace across the highway to flag down a red Jeep Cherokee. Taylor was suspicious because the woman appeared to be a man. Thus, he memorized the license plate number of the red Jeep Cherokee. When he heard about the bank robbery on television, he reported what he saw to police.

Chantel Johnson testified that she was driving a red Jeep Cherokee that belonged to her friend, Jamesia Idlebird, on the day of the incident. Idlebird arrived at Johnson's house on the morning of the incident accompanied by appellant. Idlebird needed to get a part for her car, and Johnson and Idlebird had decided to go play "speed bingo" that

---

[2] Murphy recalled that appellant had a difficult time walking in the women's shoes he was wearing.

day. Johnson drove Idlebird's Jeep because Idlebird was too high to drive. Testimony revealed that appellant is a drug dealer and that he had supplied Idlebird with some cocaine that morning. The three left Johnson's house for Hearne, Texas. Along the way, the group stopped at appellant's house so that he could take a shower. Johnson recounted that appellant was dressed normally prior to showering. However, after showering, appellant was dressed in women's clothes—a navy blue or black dress, a wig, black penny loafers, and an umbrella, or in Johnson's words, "like a girl/boy." The group then left appellant's house sometime after 11:00 a.m.[3] Johnson dropped appellant off near a restaurant and inn off of Highway 21, near the location of the bank. Johnson and Idlebird left appellant there while they ran another errand before going to play "speed bingo." After exiting the car, appellant opened the umbrella.

After Johnson and Idlebird completed their errand, they drove back to the place where they left appellant. Upon arriving, they saw appellant walking across the street. He came up to the Jeep and tapped on the window. Johnson and Idlebird let appellant inside the Jeep and left the scene. They dropped appellant off at a motel before they went to play "speed bingo."

In her testimony, Johnson denied knowing the name of the man in the Jeep, but she did recall that the man, like appellant, had many tattoos, including a bold dollar sign on his forearm. After discovering that Johnson was the driver of the Jeep, police

---

[3] Johnson knew it was the latter part of the 11:00 a.m. hour because "The Young and the Restless" was still on television.

showed her a photo lineup that included appellant. She had no problem identifying appellant as the man in the Jeep.

Bryan Police Officer Shawn Davis described how appellant became a suspect in this case. After hearing from Taylor and discovering from Idlebird that appellant was in the Jeep around the time of the robbery, Officer Davis believed that appellant was involved in the robbery. Officer Davis went to the house of one of appellant's girlfriends to question him. When questioned, appellant claimed he did not know of anyone who drove a red Jeep, got angry about the questioning, mentioned another of his girlfriends, and stated that he was being falsely accused of the robbery. Appellant admitted to being a drug dealer and cooperated with a request for a DNA sample and photographs. Officer Davis noticed that appellant had a dollar sign tattoo, among many other tattoos, on his arms.

Alexis Rawls, one of appellant's girlfriends, testified that she had seen appellant get into a red Jeep before when she had dropped him off in the past. Rawls also described a trip she and appellant took to Houston shortly after the robbery. While in Houston, appellant bought Rawls a new cell phone and himself two new cell phones. The couple then went to Pappadeaux for dinner. At the table, both played with their new cell phones. Rawls noticed that appellant used his new cell phone to watch the news. In particular, appellant was interested in a news report about a robbery of a bank by a man dressed as a woman. Although Rawls and appellant joked about the robbery, appellant soon left the table to take a phone call. Upon returning, Rawls observed that appellant was quiet and still the remainder of the evening.

Bryan Police Officer Steven Fry noted that after Rawls was contacted, appellant called. Appellant was agitated that police had contacted Rawls. Officer Fry spoke with appellant on the telephone for approximately an hour. Officer Fry believed that appellant was attempting to determine information about the investigation to see how much the police knew about the robbery. Appellant expressed concern that people were dropping his name, but he denied involvement in the robbery. Officer Fry recounted that appellant "said that he did not do this one. He also said that if he was going to rob somebody, it wouldn't be a bank, it would be basically somebody on the street." Appellant admitted knowing Idlebird, but he claimed that she had been in prison since 2004.

At the conclusion of the evidence, the jury found appellant guilty of both counts of aggravated robbery charged in the indictment. The indictment also included an enhancement paragraph pertaining to appellant's August 30, 2004 conviction for robbery in Robertson County, Texas. At the punishment phase, appellant pleaded "true" to the enhancement paragraph. The jury subsequently assessed punishment at thirty-seven years' incarceration in the Institutional Division of the Texas Department of Criminal Justice with a $5,000 fine for each count. The sentences were ordered to run concurrently. Thereafter, the trial court certified appellant's right of appeal, and this appeal followed.

## II. PRE-TRIAL IDENTIFICATION OF APPELLANT

In his first issue, appellant contends that the trial court erred in allowing a pre-trial identification of appellant to take place in the courtroom where he was the only

African-American man in the courtroom. Appellant further contends that this "tainted identification was used to unlawfully bolster the weak eyewitness identification made by the two bank employees."

In an initial lineup that did not contain a photograph of appellant, Murphy did not identify any of the photographs. In a later lineup, Murphy identified appellant as the individual who robbed the bank. Broussard, on the other hand, acknowledged that she could exclude everyone in the first lineup but that she could not make a positive identification in the second lineup.

Nevertheless, prior to trial, Broussard and Murphy recognized appellant as the man who robbed them. At this time of the identification, the jury was not present. Only a few lawyers and the judge were present. In any event, appellant appears to complain that he was the only African-American male present in the courtroom at the time of the identification, which tainted the identification.

Regardless, appellant did not object to the pre-trial identifications made by Murphy and Broussard. Furthermore, appellant did not object when both Murphy and Broussard identified appellant as the perpetrator of the robbery in their testimony. To preserve error, Texas Rule of Appellate Procedure 33.1(a) requires the complaining party to make a specific objection or complaint and obtain a ruling thereon before the trial court. *See* TEX. R. APP. P. 33.1(a); *see also Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). This requirement ensures that trial courts are provided an opportunity to correct any error "at the most convenient and appropriate time—when the mistakes are alleged to have been made." *Hull v. State*, 67 S.W.3d 215, 216 (Tex.

Crim. App. 2002). Because appellant did not object to the pre-trial identification or Murphy and Broussard's identification of appellant as the perpetrator of the robbery in their testimony, we cannot say that this error has been preserved. *See* TEX. R. APP. P. 33.1(a); *see also Wilson*, 71 S.W.3d at 349. Accordingly, we overrule appellant's first issue.

### III. SUFFICIENCY OF THE EVIDENCE

In his second issue, appellant argues that the testimony of both Murphy and Broussard is insufficient to support the jury's verdict.

### A. Applicable Law

The Texas Court of Criminal Appeals, in *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010), abandoned the factual-sufficiency standard in criminal cases; thus, we need only consider the sufficiency of the evidence under the legal-sufficiency standard articulated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979).

In *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), the Texas Court of Criminal Appeals expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the

guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Id.*

Our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. Furthermore, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of the witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically-correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "'Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quoting *Malik*, 953 S.W.2d at 240). Under a hypothetically-correct jury charge, a person commits aggravated robbery "if he commits

robbery . . . and he . . . uses or exhibits a deadly weapon . . . ."  TEX. PENAL CODE ANN. § 29.03.  A person commits robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he . . . intentionally or knowingly threatens or places another in fear of imminent bodily injury or death."  *Id.* § 29.02 (West 2011).

## B.   Discussion

On appeal, appellant focuses on the evidentiary sufficiency of the identifications made by Murphy and Broussard.  We construe appellant's sufficiency argument to address the identity element of the charged offense.

The State is required to prove beyond a reasonable doubt that the accused is the person who committed the crime charged.  *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd) (citing *Johnson v. State*, 673 S.W.2d 190, 196 (Tex. Crim. App. 1984); *Rice v. State*, 801 S.W.2d 16, 17 (Tex. App.—Fort Worth 1990, pet. ref'd)). Identity may be proved by direct or circumstantial evidence.  *Id.* (citing *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986); *Couchman v. State*, 3 S.W.3d 155, 162 (Tex. App.—Fort Worth 1999, pet. ref'd); *Creech v. State*, 718 S.W.2d 89, 90 (Tex. App.—El Paso 1986, no pet.)).  "In fact, identity may be proven by inferences."  *Id.* (citing *United States v. Quimby*, 636 F.2d 86, 90 (5th Cir. 1981)); *see Clark v. State*, 47 S.W.3d 211, 214 (Tex. App.—Beaumont 2001, no pet.); *see also Jones v. State*, 900 S.W.2d 392, 399 (Tex. App.—San Antonio 1995, pet. ref'd) (explaining that the jury may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs of life when giving effect to inferences that may reasonably be drawn from evidence).

The positive identification of a defendant as the perpetrator of a crime is sufficient to support a conviction. *See Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978); *Cate v. State*, 124 S.W.3d 922, 928-29 (Tex. App.—Amarillo 2004, pet. ref'd); *see also Williams v. State*, Nos. 12-11-00147-CR, 12-11-00148-CR, 12-11-00149-CR, 2012 Tex. App. LEXIS 6338, at **15-16 (Tex. App.—Tyler July 31, 2012, pet. ref'd) (mem. op., not designated for publication). Moreover, "[a] conviction may be based on the testimony of a single eyewitness." *Pitte v. State*, 102 S.W.3d 786, 794 (Tex. App.—Texarkana 2003, no pet.) (citing *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971)).

Here, in open court, both Murphy and Broussard identified appellant as the perpetrator of the aggravated robbery. *See Garcia*, 563 S.W.2d at 928; *Cate*, 124 S.W.3d at 928-29; *see also Williams*, 2012 Tex. App. LEXIS 6338, at **15-16. Further, the record reflects that Murphy identified appellant as the robber when presented by police with a second photographic lineup. In his testimony, Murphy emphasized that he tried to keep eye contact with the perpetrator, focusing on his eyes, mouth, and the structure of his face. Murphy also recounted that the perpetrator's sunglasses were not so dark that they prevented Murphy from seeing his eyes. And while Murphy did take some time to identify appellant in the second photographic lineup, a rational juror could have concluded beyond a reasonable doubt that appellant was the perpetrator of the aggravated robbery based on the evidence above. *See Garcia*, 563 S.W.2d at 928; *Cate*, 124 S.W.3d at 928-29; *Roberson*, 16 S.W.3d at 167; *see also Jackson*, 443 U.S. at 318-19, 99 S. Ct. at 2788-89; *Lucio*, 351 S.W.3d at 894. Broussard, on the other hand, had some

difficulty identifying appellant as the perpetrator based on the photographic lineups.[4]

However, this is unimportant given that "[a] conviction may be based on the testimony of a single eyewitness." *Pitte*, 102 S.W.3d at 794; *see Aguilar*, 468 S.W.2d at 77. And to the extent that the testimony of Murphy and Broussard contained inconsistencies, we once again note that it is within the province of the factfinder—here, the jury—to resolve conflicts in the evidence and to weigh witnesses' testimony. *See Chambers*, 805 S.W.2d at 461.

In addition, Johnson testified that she drove a red Jeep on the day of the incident and that a male rode in the back wearing women's clothes. Johnson recalled that she dropped the male off and picked him up near the bank around the time the robbery occurred. When presented with a photographic lineup, Johnson had no difficulty identifying appellant as the male wearing women's clothes in the back of the Jeep. Moreover, in open court, Johnson identified appellant as the male occupant of the Jeep. Taylor testified that he saw an odd looking male dressed in women's clothing walking briskly from the bank to the red Jeep shortly after the robbery was alleged to have occurred. Furthermore, surveillance video and testimony from both Murphy and Broussard established that the robber of the bank was wearing women's clothing similar to that which appellant was wearing on the day of the incident. And finally,

---

[4] Broussard testified that she did not identify appellant as the perpetrator in one of the photographic lineups shown to her; however, she stated that she did "find someone who looked similar in his facial features" and that she had hesitations about whether the person she selected was the perpetrator of the robbery. After viewing appellant in open court, Broussard was certain that appellant was the perpetrator of the offense. In fact, although she had seen "a good handful" of cross-dressers in the year and a half she had worked at the bank, Broussard testified that she had no question that appellant was the man who robbed her at the bank.

several witnesses testified that appellant showed an unusual interest in the robbery and, in fact, called police to pump them for information about the investigation.

Based on the foregoing, we conclude that, viewing the evidence in the light most favorable to the jury's verdict, a rational factfinder could have found beyond a reasonable doubt that appellant was the perpetrator of this crime. *See Garcia*, 563 S.W.2d at 928; *Cate*, 124 S.W.3d at 928-29; *Roberson*, 16 S.W.3d at 167; *see also Jackson*, 443 U.S. at 318-19, 99 S. Ct. at 2788-89; *Lucio*, 351 S.W.3d at 894. Accordingly, we cannot say that the evidence pertaining to the identity element of the charged offense is insufficient. *See Jackson*, 443 U.S. at 318-19, 99 S. Ct. at 2788-89; *Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13. As such, we overrule appellant's second issue.

## IV. CONCLUSION

Having overruled both of appellant's issues on appeal, we affirm the judgments of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed September 19, 2013
Do not publish
[CRPM]