

# IN THE
# TENTH COURT OF APPEALS

## No. 10-11-00158-CR

**LIBRA LAMARKUS REED,**

Appellant

 **v.**

**THE STATE OF TEXAS,**

Appellee

### From the 40th District Court
### Ellis County, Texas
### Trial Court No. 35177CR

## MEMORANDUM OPINION

Appellant, Libra Lamarkus Reed, was charged by indictment with two counts of aggravated robbery, a first-degree felony. *See* TEX. PENAL CODE ANN. § 29.03(a)(2), (b) (West 2011). A jury convicted Reed on both counts and assessed punishment at ten years' incarceration in the Institutional Division of the Texas Department of Criminal Justice for each count. The trial court ordered the imposed sentences to run concurrently. In three issues, Reed argues that: (1) the evidence supporting his conviction is legally and factually insufficient; and (2) the trial court erred by allowing

the victims of the alleged crime to be excluded from Texas Rule of Evidence 614, the "Rule," during the punishment phase of the trial. *See* Tex. R. Evid. 614. We affirm.

## I. BACKGROUND

On the morning of February 8, 2010, Robert and Bernice Jackson, both sixty-four years old, were traveling in their silver Mitsubishi Raider pickup truck from Midlothian, Texas to Dallas, Texas.[1] The Jacksons were taking their son to a doctor's appointment in Dallas.[2] Robert was driving, and he and Bernice were talking to each other when they approached a stop sign at the intersection of Midlothian Parkway and State Highway 287. Once they were stopped at the stop sign, they heard several loud taps on the passenger's-side window of the pickup truck. Robert told Bernice to lie down in the seat because a man, later identified as Reed, had a gun to her head. Robert testified that he could see that the item Reed used to tap on the window was a silver handgun that resembled a nine-millimeter. According to Bernice, Robert sounded very scared, and he told her to immediately call 911. Bernice put her head down in the seat and called 911 while Robert "floored" the truck. Bernice testified that she did not look at the man, nor did she ever hear the man say anything.

Robert began driving erratically at a high rate of speed down Midlothian Parkway because Reed was hanging on to the tailgate of the pickup truck. While Reed clung to the tailgate of the pickup truck, Robert could see from the rear-view mirror that

---

[1] The license plate on the pickup truck included a handicapped designation; however, it is not clear from the testimony whether Robert or Bernice are indeed handicapped.

[2] Bernice testified that the couple's son is a child with special needs; in particular, the couple's son is mute, blind, and very autistic.

Reed continued to hold the silver handgun in his hand. Robert ran two red lights in an attempt to throw Reed off of the tailgate. Robert did, however, slow down while crossing a railroad track. When the pickup truck slowed, Reed got into the bed of the truck. Robert continued to drive erratically in hopes of throwing Reed off the pickup truck, but Robert eventually lost control and the pickup truck ended up in a ditch. At this point, Robert and Bernice kept telling each other that they were going to die. However, Reed jumped out of the bed of the truck and ran away.

After Reed had run away, Robert was able to get the pickup truck out of the ditch and drove towards a local gas station to wait for the police to arrive. When the police arrived, they asked Robert and Bernice questions about the incident and inspected the pickup truck. Police found a cell phone, a cell phone case, a lighter, and several pools of blood in the bed of the pickup truck. Because it was raining on the day of the incident, police quickly took the found items into custody and used gauze to soak up the blood from the bed of the pickup truck so that the blood could be tested later.

Tony Bovinich, then an investigator with the Midlothian Police Department, used the phone numbers contained in the cell phone to locate its owner—Reed's girlfriend, Amy Reed. Bovinich also found that the "mama" contact in the cell phone related to Reed's mother, Della Reed Harris. Bovinich also determined that Reed fit the description of the suspect provided by Robert. A photographic lineup was then created with Reed being one of the suspects in the lineup. Robert positively identified Reed as the assailant from the photographic lineup.

Reed was arrested in Waxahachie, Texas, on March 11, 2010. After securing a search warrant, police collected buccal swabs from the inside of Reed's cheeks. The DNA from the blood obtained from the bed of the pickup truck was compared to the buccal swabs taken from Reed's cheeks. DNA analysts concluded that "[t]he DNA profile from the stain from the gauze is consistent with the DNA profile of the suspect [Reed]. . . . To a reasonable degree of scientific certainty, the suspect is the source of this profile (excluding identical twins)."

At the conclusion of the trial, Reed was convicted on both counts of aggravated robbery, and a deadly weapon finding was made. *See* TEX. PENAL CODE ANN. § 29.03(a)(2). During the punishment hearing, several witnesses testified. Robert and Bernice provided testimony regarding victim impacts, though Reed objected to their presence during the punishment hearing. After hearing all of the punishment evidence, the jury sentenced Reed to ten years' imprisonment with no fine on each count. The trial court ordered that the imposed sentences run concurrently and certified Reed's right to appeal. This appeal followed.

## II.    SUFFICIENCY OF THE EVIDENCE

In his first and second issues, Reed contends that the evidence supporting his conviction is legally and factually insufficient.[3] We disagree.

---

[3] We note that Reed's appellate brief lacks several elements required by Texas Rule of Appellate Procedure 38.1, including a complete listing of the identity of parties and counsel, an issues-presented section, and a summary of the argument. *See* TEX. R. APP. P. 38.1(a), (f), (h). However, because of our disposition and to expedite this matter, we will implement Texas Rule of Appellate Procedure 2 to suspend these rules. *See id.* at R. 2.

## A. Standard of Review

The Court of Criminal Appeals in *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010), abandoned the factual-sufficiency standard in criminal cases; we need only consider the sufficiency of the evidence under the legal-sufficiency standard articulated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). As such, we will analyze Reed's sufficiency claims under the *Jackson* legal-sufficiency standard of review. *See Brooks*, 323 S.W.3d at 902 (concluding that there is "no meaningful distinction between the *Jackson v. Virginia* legal sufficiency standard and the . . . factual-sufficiency standard, and these two standards have become indistinguishable."); *see also Harrison v. State*, No. 14-10-00254-CR, 2011 Tex. App. LEXIS 9133, at *16 (Tex. App.—Houston [14th Dist.] Nov. 17, 2011, no pet. h.) (mem. op., not designated for publication) (construing a factual-sufficiency challenge as a legal-sufficiency challenge).

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, No. AP-76,020, ___ S.W.3d ___, ___, 2011 Tex. Crim. App. LEXIS 1222, at **43-44 (Tex. Crim. App. Sept. 14, 2011).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2792-93. Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically-correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the

defendant was tried." *Villarreal*, 286 S.W.3d at 327; *see Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

## B. Discussion

On appeal, Reed argues that: (1) there was no imminent threat because there was no physical contact or communication between Robert, Bernice, and him; (2) there is no evidence of a theft, especially considering no demand for property was made; and (3) the State did not establish a nexus between the alleged assaultive conduct and the theft.

As indicted in this case, a person is guilty of aggravated robbery if he "commits robbery" and "uses or exhibits a deadly weapon." TEX. PENAL CODE ANN. § 29.03(a)(2). A person commits robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another or intentionally threatens or places another in fear of imminent bodily injury or death." *Id.* § 29.02 (West 2011). A person commits theft if he "unlawfully appropriates property with intent to deprive the owner of the property." *Id.* § 31.03(a) (West Supp. 2011).

### 1. The Use-of-a-Deadly-Weapon and Threat-of-Imminent-Bodily-Injury or Death Elements of Aggravated Robbery

The Texas Court of Criminal Appeals has recently interpreted section 29.02 of the penal code—the robbery statute—noting that:

> The plain language of the statute encompasses not just explicit threats, but whatever implicit threats may lead to the victim being placed in fear. So long as the defendant's actions are of such nature as in reason and common experience is likely to induce a person to part with his property

> against his will, any actual or perceived threat of imminent bodily injury will satisfy this element of the offense.

*Howard v. State*, 333 S.W.3d 137, 138 (Tex. Crim. App. 2010) (internal quotations omitted) (citing *Olivas v. State*, 203 S.W.3d 341, 345-46 (Tex. Crim. App. 2006) (interpreting, without deciding, the definition of "threaten" for purposes of the Texas assault statute, and stating the following from the robbery statute: "By defining robbery to be theft plus *either* threatening or placing another in fear, this statute demonstrates that the term 'threaten' means something other than placing a person 'in fear of imminent bodily injury or death" (emphasis in original)); *Cranford v. State*, 377 S.W.2d 957, 958 (Tex. Crim. App. 1964)); *see Pitte v. State*, 102 S.W.3d 786, 793 (Tex. App.—Texarkana 2003, no pet.) ("It is sufficient to constitute robbery if the accused places the complainant in fear of bodily injury or death to the degree that reason and common experience will likely induce the complainant to part with his property against his will." (internal quotations omitted)). In other words, is it not a specific element of the offense of aggravated robbery that the actor has a confrontation or physical altercation with another person. *Howard v. State*, 306 S.W.3d 407, 410 (Tex. App.—Texarkana 2010), *aff'd*, 333 S.W.3d 137. "Under the 'placed in fear' language of section 29.02, the fact-finder may conclude that an individual was 'placed in fear' in circumstances where no actual threats are conveyed." *Howard*, 306 S.W.3d at 410 (citing *Burton v. State*, 230 S.W.3d 846, 852 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *Williams v. State*, 827 S.W.2d 614, 616 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd)).

Here, Robert testified that he saw Reed approach the pickup truck while he was at the intersection of Midlothian Parkway and State Highway 287. According to Robert, Reed tapped on the window with a handgun and subsequently aimed the handgun at Bernice's head. Robert immediately told Bernice what was happening and instructed her to lie down in the seat and call 911. Though Bernice acknowledged that she did not see Reed and both Robert and Bernice noted that they did not hear Reed say anything, both Robert and Bernice were aware of the situation and were in fear for their lives. Robert stated that he tried to evade Reed, but Reed grabbed on to the tailgate and eventually pulled himself into the bed of the pickup truck. When he lost control of the pickup truck and it careened into the ditch, Robert told Bernice that "we're going to die, we're going to die." Alan Patterson, then an officer with the Midlothian Police Department, testified that he spoke with Robert and Bernice at the gas station after the incident transpired. Patterson recalled that: "Mr. Jackson was—you could tell he was a little upset, but not quite near as much as Bernice Jackson was. She was almost hysterical, very excited, very worked up. As in something—you know, something traumatic just happened."

Based on the testimony adduced at trial, we find that a rational factfinder could conclude that both Robert and Bernice were placed in fear of bodily injury or death even though Reed did not verbalize a threat. *See* TEX. PENAL CODE ANN. §§ 29.02, 29.03; *see also Howard*, 333 S.W.3d at 138; *Howard*, 306 S.W.3d at 410; *Pitte*, 102 S.W.3d at 793. Reed's tapping on the window of the Jackson's pickup truck with a handgun, his aiming the handgun at Bernice's head, and the fact that he clung to the tailgate of the

couple's truck for a substantial distance and eventually climbed into the bed of the truck constitutes sufficient evidence for a rational factfinder to conclude that Reed impliedly threatened the Jacksons with imminent bodily injury or death. *See Howard*, 333 S.W.3d at 138; *Howard*, 306 S.W.3d at 410; *Pitte*, 102 S.W.3d at 793; *see also DeLeon v. State*, 865 S.W.2d 139, 142 (Tex. App.—Corpus Christi 1993, no pet.) (concluding that the mere presence of a deadly weapon, under proper circumstances, can be enough to instill fear and threaten a person with bodily injury) (citing *Gaston v. State*, 672 S.W.2d 819, 822 (Tex. App.—Dallas 1983, no pet.) (affirming a conviction for aggravated assault even though the defendant made no physical motion to employ the gun, nor did he verbally threaten the victim). Further, the testimony clearly indicates that both Robert and Bernice were in fear for their lives because of Reed's actions. In addition, we hold that the record contains sufficient evidence demonstrating that Reed exhibited a deadly weapon during the commission of this offense. *See* TEX. PENAL CODE ANN. § 29.03; *see also Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989) (stating that "'exhibited a deadly weapon' means that the weapon was consciously shown or displayed during the commission of the offense").

### 2. The Theft Element of Aggravated Robbery

Next, we address Reed's contention that his conviction is not supported by sufficient evidence demonstrating that either an actual theft occurred or an intent to steal on his part. Texas courts have held that the phrase "in the course of committing theft," which is included in the robbery statute, "means conduct which occurs in an attempt to commit, during commission, or in immediate flight after the attempt or

commission of theft." *Autry v. State*, 626 S.W.2d 758, 762 (Tex. Crim. App. 1982); *see* TEX. PENAL CODE ANN. § 29.01(1) (West 2011); *Green v. State*, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992) ("'The actual commission of theft is a not a prerequisite to the commission of robbery; the gravamen of robbery is the assaultive conduct and not the theft.'" (quoting *Crank v. State*, 761 S.W.2d 328, 350 (Tex. Crim. App. 1988))); *Sendejo v. State*, 953 S.W.2d 443, 452 (Tex. App.—Waco 1997, pet. ref'd). In other words, to show a robbery, the evidence must show that the accused assaulted the victim in an attempt to commit theft. *See Green*, 840 S.W.2d at 401.

We have already concluded that Reed engaged in assaultive conduct as to Robert and Bernice—namely, using a deadly weapon to place them in imminent fear of bodily injury or death. Thus, the focus of our inquiry as to this contention is whether the record contains sufficient evidence to demonstrate that Reed attempted to commit theft.

In the present case, Robert testified that:

> When I saw the gun, I know he [Reed] didn't—he wasn't asking for a ride. I knew that when he came up to my door with a gun in his hand . . . I think he was—*I thought he was going to take my vehicle and harm one of us or both of us.*

(Emphasis added). Robert also testified that Reed clung to the tailgate of the truck and eventually climbed into the bed of the pickup truck after Robert had driven a substantial distance, which could arguably indicate an intent to appropriate the pickup truck. In convicting Reed, the jury clearly believed Robert's statement that Reed intended to steal the pickup truck when he approached the passenger-side window. *See Chambers*, 805 S.W.2d at 461. Furthermore, a specific verbal demand is not the talisman

of an intent to steal; instead, intent may be inferred from conduct. *See Johnson v. State*, 541 S.W.2d 185, 187 (Tex. Crim. App. 1976); *see also Garcia v. State*, Nos. 01-08-00247-CR, 01-08-00248-CR, 2010 Tex. App. LEXIS 2186, at *15 (Tex. App.—Houston [1st Dist.] Mar. 11, 2010, pet. ref'd) (mem. op., not designated for publication) (noting also that a completed theft is not required to support a conviction for aggravated robbery). Therefore, based on Robert's belief that Reed wanted to steal the pickup truck and Reed's actions, we conclude that a rational factfinder could conclude that Reed intended to commit theft. *See* TEX. PENAL CODE ANN. §§ 29.02, 31.03(a); *see also Jackson*, 443 U.S. at 318-19; *Hooper*, 214 S.W.3d at 13.

### 3. The Nexus Between the Assaultive Conduct and the Attempted Theft

Robbery requires a nexus between the assault and the theft. *See Cooper v. State*, 67 S.W.3d 221, 223 (Tex. Crim. App. 2002). The court of criminal appeals has held that the evidence will be sufficient to show a nexus if it shows that the theft occurred immediately after the assault. *Sorrells v. State*, 343 S.W.3d 152, 157 (Tex. Crim. App. 2011); *McGee v. State*, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989). Here, the testimony establishes that the assaultive conduct occurred at the same time as Reed was attempting to steal the Jackson's pickup truck. As such, we conclude that there is sufficient evidence to show a nexus between the assaultive conduct and the attempted theft. *See Sorrells*, 343 S.W.3d at 157; *Cooper*, 67 S.W.3d at 223; *McGee*, 774 S.W.2d at 234; *see also Jackson*, 443 U.S. at 318-19; *Hooper*, 214 S.W.3d at 13.

Based on the foregoing, we conclude that, viewing the evidence in the light most favorable to the verdict, a rational factfinder could conclude that Reed used a gun, a

deadly weapon, to place Robert and Bernice in fear of imminent bodily injury or death during an attempt to steal the couple's pickup truck. *See* TEX. PENAL CODE ANN. § 29.03; see also *Jackson*, 443 U.S. at 318-19; *Hooper*, 214 S.W.3d at 13. Accordingly, we hold that the evidence is sufficient to support Reed's conviction. *See* TEX. PENAL CODE ANN. § 29.03; *see also Jackson*, 443 U.S. at 318-19; *Hooper*, 214 S.W.3d at 13. Reed's first and second issues are overruled.

### III. THE RULE AND THE PUNISHMENT PHASE OF THE TRIAL

In his third issue, Reed complains that the trial court erred by allowing the victims to remain in the courtroom during the punishment phase of the trial in contravention of article 36.06 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 36.06 (West 2007).[4] Specifically, Reed asserts that "allowing Mr. Jackson to testify immediately after hearing Mrs. Jackson's testimony as to the impact the crime had on her materially affected his testimony because he then had an opportunity to tailor his testimony to hers in an attempt to receive a favorable outcome."

Here, Reed invoked the Rule at the beginning of the guilt-innocence phase. Then, at the beginning of the punishment phase, the following exchange occurred:

---

[4] Article 36.06 of the code of criminal procedure provides that:

Witnesses, when placed under rule, shall be instructed by the court that they are not to converse with each other or with any other person about the case, except by permission of the court, and that they are not to read any report of or comment upon the testimony in the case while under rule. The officer who attends the witnesses shall report to the court at once any violation of its instructions, and the party violating the same shall be punished for contempt of court.

TEX. CODE CRIM. PROC. ANN. art. 36.06 (West 2007).

| | |
|---|---|
| THE STATE: | There is one matter that we would ask. The Jacksons, Mr. and Mrs. Jackson[,] are in the courtroom at this time. It is possible that they may testify as to victim impact. That's the only testimony that they would give at this stage of the trial. |
| | And, therefore, we would ask that they be allowed to be excused from the witness rule pursuant to that provision of the rule which excludes the victims of the offense as long as they're not testifying to anything substantive regarding the punishment itself. |
| THE COURT: | It's granted. |
| DEFENSE COUNSEL: | Well, for the record, we object, Your Honor. Their mere presence in the courtroom during this phase of the trial is prejudicial and it overcomes, in my opinion, any positive effect their presence could have. I just strongly object to their being here while the jury is hearing evidence, for the record. |
| THE COURT: | The objection is overruled. I want to be clear, though. The Jacksons are released from the Rule. To the extent they testify, it needs to be victim impact only. |

Subsequently, Bernice and Robert testified regarding the impact the incident had on their lives.

Texas Rule of Appellate Procedure 33.1(a) states that, to preserve error for appellate review, a party must make a timely, specific objection at the earliest possible opportunity, obtain an adverse ruling from the trial court, and urge on appeal a complaint corresponding to the objection made at trial. TEX. R. APP. P. 33.1(a); *see Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (stating that a party's "point of error

on appeal must comport with the objection made at trial"). At the commencement of the punishment phase, Reed objected to Bernice and Robert being present during the hearing; however, Reed couched his objection as a Texas Rule of Evidence 403 objection rather than the complaint he makes on appeal—that the trial court's ruling violates articles 36.03 and 36.06 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. arts. 36.03 (West 2007), 36.06; *see also* TEX. R. EVID. 403. We therefore conclude that Reed's complaint on appeal does not comport with his objection in the trial court, and as a result, we hold that this issue is waived. *See* TEX. R. APP. P. 33.1(a).

## IV. CONCLUSION

Having overruled all of Reed's issues on appeal, we affirm the judgment of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed February 29, 2012
Do not publish
[CR25]